UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

In re:

Tonya H. Howes,

    Debtor;

_____

US Bank Trust National Association, as Trustee
of the PRP II PALS INVESTMENTS TRUST

        Movant

vs.

Tonya H. Howes
and Jeffrey V. Howes

        Respondents

Case No.: 16-22829-WIL
Chapter 13

**DEBTORS' AMENDED RESPONSE
IN OPPOSITION TO
MOTION FOR RELIEF FROM
AUTOMATIC STAY**

---

## DEBTORS' AMENDED RESPONSE IN OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY

Debtor Tonya H. Howes, and Co-Debtor Jeffrey V. Howes, collectively herein as ("Debtors"), *Pro Se*, hereby respond and respectfully object to the Motion for Relief from Automatic Stay filed by US BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE PRP II PALS INVESTMENTS TRUST the above named creditor, ("Movant", herein), and "SN Servicing Corporation, Servicer".

1. On September 25, 2016, the Debtor filed a voluntary Petition for relief pursuant to Chapter 13 of the United States Bankruptcy Code in the District of Maryland.

2. The Debtor is a joint owner of real estate located at 7000 Meandering Stream Way, Fulton MD, (hereinafter, the "Property"). The Property, and in particular, a determination as to the extent to which certain parties, purported as predecessors in interest by Movant, are entitled to enforce the debt instrument secured by the Property, is in the subject of existing litigation in the U.S. Court of Appeals, for the Fourth Circuit (Case No. 15-2332, hereafter the "Appeal"), with oral arguments heard on December 6, 2016.

1

3.  On November 16, 2016, Movant, through it's attorneys McCabe, Weisberg & Conway, LLC, filed a Motion for Relief from Stay, identified as ECF 24 in this case, hereinafter referred to as the ("Motion"), and attached hereto as **"EXHIBIT A"**.  Movant also filed several other documents, ECF 24-2, attached hereto as **"EXHIBIT B"**, but Movant does not refer to any of the attached documents in the Motion.

4.  The Debtor hereby opposes the court's granting of the Motion, and in support thereof submits the following,

## I.  FACTUAL ALLEGATIONS

5.  In support of the Motion, Movant attached several documents (*EXHIBIT B*), but Movant does not refer to any of them in the Motion. In addition, Movant does not assert anywhere in the Motion that the attached documents are authentic, true, or correct, nor is there any attached affidavit of any other person certifying the documents.

6.  One of the documents Movant attaches is entitled "Construction Note" (see *EXHIBIT B*, 37), and would appear to be a copy of the debt instrument that Movant avers to in the Motion as the note (herein as "New Note"), under which Movant is entitled to payment (*Motion.* ¶2).

7.  A copy of a different version of Debtor's note has been presented by counsel to Movant, and other parties[1], in the Debtors' other cases for over four (4) years, and attached hereto, with it's accompanying documents, as **"EXHIBIT C"**, and referred to herein as ("Note 1"). Note 1, and the 2016[2] New Note, along with the respective documents attached to each, are similar but with some exceptions, including the items described further herein below.

---

1  Counsel to Movant representing, Carrington Mortgage Services, LLC in the other cases, and Wells Fargo Bank, N.A. (purported predecessor in interest to Movant in this case). Counsel to Movant personally affirmed that Note 1, which was submitted on 4/3/2014 was a true and accurate copy Debtors note.

2  The New Note was never before seen until first presented on 9/7/2016 in connection with a sudden attempt to schedule a sale in 2012 state foreclosure case filed by another entity (defunct at the time), as Plaintiff, and attaching *Note 1* as the true and correct debt instrument.

| "Note 1"[3] | "New Note" |
|---|---|
| A two (2) page document, dated November 30, 3001, entitled "Construction Note", identifying the following:<br><br>   1. Lender as "The Columbia Bank",<br><br>   2. Amount as "$696,130", and<br><br>   3. Specifically endorsed as follows:<br><br>(A) Pay to the order of Wells Fargo Home Mortgage, Inc., by Michael Torcisi, Vice President, The Columbia Bank, and<br><br>(B) Without Recourse **Pay to the order of:** "Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003" (hereinafter as the **"2003 Trust"**)[4], by Beverly Cro[ckett], Assistant Secretary, Wells Fargo Home Mortgage, Inc. | A three (3) page document, with seemingly identical content to Note 1 on the first 2 pages, but with the following exceptions,<br><br>1. Someone has apparently crossed-out (drawn an "X" over) the final indorsement (B) present the prior version, and<br><br>2. A new page is added that has never before been seen on any of the prior note copies (see next) |
| NOT PRESENT | The following indorsement appears stamped on blank page, which was <u>not</u> on Note 1 or any cote copy previously produced.<br><br>"WITHOUT RECOURSE, PAY TO THE ORDER OF <u>    </u> WELLS FARGO BANK, N.A. SUCCESSOR BY MERGER WITH WELLS FARGO HOME MORTGAGE, INC.", and is signed by Samuel C. Shelley, Senior Vice President |
| Notary certification of the appearance of Debtor's Spouse, individually as attorney-in-fact for Debtor, strangely dated April 16, 2003 (the date of a later modification) but purporting to certify the 2001 note execution. More important, perhaps, is that this page, in all prior note copies, directly follows the last page of the note containing the indorsements. | SAME |

---

3   "Note 1" herein refers to multiple instances of copies of the note and related documents introduced in all other judicial proceedings or used in connection with a foreclosure action. In the event that certain attachments to prior note copies varied, unless otherwise noted, "Note 1" herein refers to the version introduced as evidence on 4/3/2014 in Debtor's Adversary case by counsel to Movant in this case, while representing another party in that case.

4   Wachovia Bank NA was acquired by Wells Fargo Bank, NA in 2008. On 11/21/2009 Wells Fargo executed an allonge (discussed in detail, *infra*), that appears to indorse the note to the same 2003 Trust, but notes a change in trustee and identifies the trust with greater particularity as "US Bank National Association, as Trustee for WFASC 2003-4"

| | |
|---|---|
| A one page allonge dated November 21, 2009, executed by Karen Abernathy, and identifying the "Present Holder" of the note to be the 2003 Trust. **(EXHIBIT C, 4)**<br><br>The 2009 allonge further purports to transfer all rights and interests in the note to US Bank, National Association, as Trustee, of the 2003 Trust. | A seemingly identical copy of the same allonge, except that someone has stamped "VOID" over Ms. Abernathy's signature. **(EXHIBIT B, 41)**<br><br>**Given this and other discrepancies between the two versions of the Note offered by the Movant, it is not clear as to when the second endorsement was stamped on the document.**<br><br>Moreover, as discussed in greater detail below, we have copies of the note certified as "true and correct" both with, and without, the stamped indorsement[5]. |
| NOT PRESENT | A one page, undated, Allonge executed by Troy Grande as "Authorized Signatory" of Stanwich Mortgage Acquisition Company II, LLC, as attorney-in-fact to "CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2013-2"<br><br>This undated allonge purports to transfer the note to Stanwich Mortgage Acquisition Company II, LLC. |
| NOT PRESENT | A second one page, undated, Allonge executed by Troy Grande as "Authorized Signatory" of Stanwich Mortgage Acquisition Company II, LLC<br><br>This undated allonge purports to transfer the note to "US BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE PRP II PALS INVESTMENTS TRUST"<br><br>**Given that these two new allonges are undated and have never before been attached to any of the note copies, and that the endorsements alleged in the documents would be impossible in the presence of the 2009 allonge, it is imperative that we know when these documents were executed and under what authority.** |

---

[5] As noted above, on 1/18/2012, 2/17/2012, and 4/3/2013 the Affiants certify the note is correct *without* the alterations and *without* the page with the stamped endorsement, and Ms. Levaugh certifying, on 8/29/2016 that the copy of the note is correct *with* the alterations and additional page. The note that was purportedly lost sometime before 2/12/2013, **The question remains, when, whom and with what authority were the alterations made to the face of the note, the 2 undated allonges added, the 2009 stamped "VOID", and the new endorsement affixed (post petition in Co-Debtor's, then active, case) and without leave from that court?**

| | |
|---|---|
| Affidavit of Alisha M. Allen, of Wells Fargo, certifying on January 18, 2012 that the copy provided is true and correct representation of the note. **(EXHIBIT D)**<br><br>On February 17, 2012, Shannon Menapace of Covahey, Boozer, Devan, & Dore, P.A. certifying the lien instrument and DOT attached to the 2012 foreclosure Order to Docket as "true and correct". **(EXHIBIT F)**<br><br>Counsel to the Movant in this case, by Line in Debtor's Adversary case on 4/3/2014, that the documents being provided to Debtor's counsel are a "true and accurate copy" **(EXHIBIT G)** | Although the parties here, nor their agents, have certified the accuracy of the submitted copy, a substantially identical copy of the New Note was certified as "true and correct" on August 29, 2016 by Allison Levaugh, of SN Servicing Corporation, as agent to Movant. **(EXHIBIT E)** |
| A Lost Note Affidavit ("LNA") dated 2/12/2013, and executed by Michael L. Hambleton, Vice President of Loan Documents at Wells Fargo. **(EXHIBIT C, 5)**. Although the LNA is facially defective pursuant to UCC § 3-309, MCL § 3-309, Md. R.P. § 7-105.1(d-1), not stating when, or from whom, Wells Fargo reacquired it's interest after purportedly transferring it's interest to the 2003 Trust, it may, however, be inferred by the execution date, that the alleged loss of the note occurred prior to 2/12/2013. | OMITTED[6] |
| NOT PRESENT | A curious single-page document ,"Corporate Assignment of Deed of Trust" ("2015 Assignment" herein, **EXHIBIT B, 26)**, dated 5/15/2015 (post-petition in Co-Debtor's, then active, bankruptcy case), executed by Kyle Phillip Blazovich of Wells Fargo bank, N.A., and identifying as follows,<br><br>Assignor: [the 2003 Trust]<br>Assignee: Wells Fargo Bank, N.A.<br><br>The first problem here is that the "Assignor" entity ceased to exist on 1/25/2012, and probably was not "doing" much on 5/15/2015. **The second question that comes up is, if the Movant is now asserting (via the note alterations) that the 2003 Trust *never* had any interest in the note, then why is Wells Fargo executing assignments[7] of the DOT *on behalf of* the 2003 Trust, and *back* to itself?** |

---

6   Counsel to Movant alleged, on 12/6/2016, that the note is now "found". The date the note was purportedly found is not clear but based on Movant's counsel's oral argument in the 4th Circuit case that it was found "approximately 2 months ago", the date would have had to be on or around October 6, 2016. (Tr. Oral Arguments, 15-2332, at 20:30)

7   The 5/15/2015 assignment is not the first assignment executed on behalf of the defunct entity. On 10/31/2013, Susan E. Balfanz of Wells Fargo executed similar assignment, also identifying the "Assignor" as the defunct 2003 Trust, and Wells Fargo Bank NA as the "Assignee" (hereinafter the "Balfanz Assignment" **(EXHIBIT C, 11)**.

8.  Debtor had never heard of Movant "PRP II PALS INVESTMENTS TRUST", or it's agent "SN Servicing Corporation" prior to it's filing in this case. Co-Debtor only learned of Movant and it's agent through a Transfer-of-Claim in his case (**EXHIBIT H**) , pursuant to which Movant purports to have acquired it's rights to payment under Debtors' note on April 29, 2015, in the second of two post-petition transfers of claim.

9.  Debtors' have never had a relationship Movant or it's alleged servicing agent. The Movant trust was incorporated on February 3, 2015 (**EXHIBIT I**). Based on Debtor's research, and other information[7], the Movant trust was apparently established by a debt buying company known as "Gemini Capital Management". Movant, nor it's alleged agent, have even sent Debtors' a statement. Movant attaches to the Motion a page entitled post-petition "loan history" (*EXHBIT B*, 1), but it is on a blank paper with no company letterhead, nor any indication of who produced the document and is assuming responsibility for it's production. All of the transactions on the "loan history" appear to be entered on the same date. The address of the Property and Debtor's name appear nowhere on the document.

10.  Debtor is current on plan payments and has paid $7,873.77 in post-petition mortgage payments to former counsel per his instruction based on the current plan. The payments have not yet been returned. Debtor is willing and capable to deposit the aforementioned, and further post-petition payments, with the court or with the US Trustee upon approval of the court.

11.  Property taxes are being billed directly Debtor, and Debtor timely paid the $11,884 property tax for 2016 directly to the county (**EXHIBIT J**). Therefore, post-petition payments should not be calculated to include property tax.

---

7  Debtors thought it was a bit unusual that, in the mediation conference (by telephone) in the 4th Circuit case, the individuals on the other end refused to identify their employer, the party they represent, nor their relationship with that party. In fact, the individuals only stated their names, and referred to their principal as "the entity". Based on Debtors's research, information, and belief, "Jack Krupey" is the founder of "Gemini Capital Managers, LLC" (hereinafter "Gemini", **EXHIBIT S**) and "Julie O'Hara" was formally an employee at SN Servicing and now works for Gemini.

## LEGAL ARGUMENT

12.   Debtors agree that this court has jurisdiction over this matter to the extent that Movant has standing to file the motion, but Debtors dispute that Movant has either constitutional or prudential standing to file the Motion, pursuant to F.R.C.P 17, as made applicable to motions for relief from stay by B.R. 9014 and B.R. 7017. Debtors further dispute the allegations in paragraph 1 of the Motion that Movant is "secured creditor" in the property, or has any claim against Debtors pursuant to which the requested relief may be granted.

13.   Debtors disagree with all of the monetary amounts alleged in paragraph 3 and 4 of the Motion, except the principal balance amount, however Debtors have no obligation to Movant. Moreover, none of the amounts are relevant if Movant is not the party entitled to payment pursuant to the underlying obligation, and there is no debt, nor default, *as specifically alleged* by Movant.

14.   Debtors further oppose the Motion in it's entirely, as the Motion is filed pursuant to Title 11 U.S.C. § 362, under which relief is applicable only to a "party in interest".

## MOVANT IS NOT A "PARTY IN INTEREST" UNDER U.S.C. § 362

15.   Movant has attached documents to the Motion but not only has Movant failed to certify, or offer any testimony, as to their accuracy, but the Motion in fact silent to the attached documents, thus rendering Movant's allegations in the Motion mere conjecture. Assuming that Movant is relying on the documents attached to the motion to prove it's right to payment under Debtors' Note, and therefore it's standing to file the Motion, the documents attached utterly fail to do so.

Movant's Basis for Standing

16.   Movant "PRP II PALS Investments Trust" (hereinafter "PRP"), an apparent buyer of debts known to be in default (discussed *supra*, ¶9 and fn 7), purports to have acquired it's rights under Debtor's Note on April 29, 2015, via a transfer-of-claim in Co-Debtor separate Chapter 13 case, post-

7

petition, when that case was still active. (see EXHIBIT H). In particular, on March 8, 2013, the original

proof of claim was filed by Wells Fargo Bank, N.A. (hereinafter "Wells Fargo"), "as Servicer"[8] to the

2003 Trust, and <u>identifying the 2003 Trust as the principal party in interest,</u> but attaching no supporting

documents ("POC 4-1", **EXHIBIT K**). On March 15, 2013, Wells Fargo amended the proof-of-claim,

identifying itself as the principal party in interest but attaching a copy of Note 1, specifically indorsed

to the 2003 Trust ("POC 4-2", **EXHIBIT M**). Wells Fargo never filed a motion for relief from stay, but

instead chose to transfer POC 4-2 to transfer the claim to a party identified as "Christiana Trust, A

Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust,

Series 2013-2" ("Christiana Trust" herein), with "Carrington Mortgage Services, LLC" ("Carrington"

herein) as "Servicer" (**EXHIBIT N**).  Subsequently, on July 14, 2014, Carrington filed another transfer

of claim, purporting itself as the "Transferor" and "Christiana Trust c/o Selene Finance, LP" (herein

"Selene") as the "Transferee" (**EXHIBIT O**), and attaching a letter entitled "Servicing Transfer

Information" purportedly notifying Debtors of a change in Servicer to Selene, although Debtors never

received the letter because it was sent to the wrong address[9]. Finally, on April 29, 2015, Christiana

Trust purportedly transferred POC 4-2 to PRP (see *EXHBIT H*).

17.  The court should note however, before spending too much time attempting to untangle the

above paragraph, that the undersigned Debtors herein contend that *Wells Fargo* did not have any

interest in Debtors' Note when it filed amended POC 4-2, and therefore had nothing to transfer.

Notwithstanding that Co-Debtor's bankruptcy case was dismissed, the Adversary case is still active in

the jurisdiction of the U.S. Court of Appeals for the Fourth Circuit and there has been no finding by any

---

8   Wells Fargo also filed an Objection to Plan Confirmation on 1/9/2013, identifying it's role as "Servicer" to the 2003
    Trust, and identifying the 2003 Trust as the principal party in interest.
9   The Notice of Servicer change letter was sent to a prior business of Debtor, more than two years after Debtors moved
    their office from that address. Debtors have never received any communication from Selene Finance as alleged Servicer,
    nor do Debtors recognize the account number stated in the letter. Debtor also asserts, and other courts have held, that the
    letter, even if sent to the correct address, is insufficient as "evidence of the transfer", pursuant to B.R. 3001(e)(2), and
    that the evidence must include the writing on which the transfer is based.

court that Wells Fargo had sufficiently proven itself as a principal party in interest. Worth noting is that

the bankruptcy court in that case dismissed the AP on a 12(b)(6) motion, thus the matter of Wells

Fargo's status as a secured creditor or party-in-interest, in it's own individual capacity, has never

reached trial on merits in any court.

## A Transferee may have no more rights than it's Successor

18.   Movant allegedly derives it's rights from Wells Fargo, and in particular, multiple transfers of the

POC 4-2 that Wells Fargo filed on March 15, 2013. Notwithstanding all of the intermediate transfers of

the claim, whether valid or not, Movant cannot possibly have any more rights or powers than Wells

Fargo did when it relinquished itself of the claim on June 13, 2013 (Ex. N). This basic principle (*nemo*

*de quod non habet*) was explained by the US Supreme Court, long ago:

> [6] "No one in general can sell personal property and convey a valid title to it unless he is
> the owner or lawfully represents the owner. *Nemo dat quod non habet.* Persons, therefore,
> who buy goods from one n t the owner, and who does not lawfully represent the owner,
> however innocent they may be, obtain no property whatever in the goods, as no one can
> convey in such a case any better title than he owns, unless the sale is made in market overt,
> or under circumstances which show that the seller lawfully represented the owner."

*In Re: Mitchell v. Hawley*, 83 U.S. 544, 21 L. Ed. 322, 21 L. Ed. 2d 322 (1873). In the instant case, the

court need not, and cannot, address Movant's status as a party in interest to Debtors' note, without first

finding that Wells Fargo has such interest to transfer on the date of the alleged transfer.

## New Note version; New Theory; Fabricated and Altered Evidence

19.   The court should note that the very documents that Movant, and other parties, rely on in the

other cases in attempting to prove their rights under Debtors' note are in direct conflict with the

documents Movant have submitted in this case. (See pages 3-5). Most notably,

A) Someone has crossed out the indorsement on the face of the note to the 2003 Trust,
   which indorsement was previously certified as true and correct.

B) There is a new blank page, not present on any note copies present prior to September 2016,
   with a purported indorsement never before seen. Prior note versions were certified true and

correct *without* the page and stamp.

C) Someone stamped "VOID" on the 2009 allonge, indorsing the the note to the 2003 Trust, which allonge was relied on the other cases, certified true and correct, and *part of the note by definition.*

D) Two new, undated and never before seen, allonges are included, which new allonges would be impossibilities in the presence of the 2009 allonge or the indorsement to the 2003 Trust on the face of the note.

As explanation for these differences, counsel to Movant proffered that this was because "the note was lost" (Hearing, 12/15/2016). There are several problems with this notion, the first, and perhaps only one needed to debunk counsel's supposition, is that **Wells Fargo, and the other parties, not only presented Note 1 as evidence, but grounded their arguments on the facts asserted in Note 1, namely that Wells Fargo *did* transfer the note to the 2003 Trust, but then later somehow "got it back"**[10]. This raises the question: Is Movant now averring that Wells Fargo, for four years, actually *thought* that it transferred the note to the 2003 Trust, but then discovered, upon purportedly finding the note, that it was conveniently *not* transferred to the trust at all?

20. A more plausible inference would be that Wells Fargo fabricated this new evidence, and altered it's unfavorable evidence, to illegally improve it's position, and that of it's successors, in the cases, as other courts have found is a systemic practice at Wells Fargo. In a similar situation, the U.S. Bankruptcy for the Southern District of New York held that unless a party statutorily qualifies as a "creditor", that party is not entitled to relief from stay.

Section 101(10) of the Bankruptcy Code defines a "creditor" as an:

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or

---

10 Prior to 2016, the parties to the other cases argued varying theories of how Wells Fargo might have acquired the it's interest in Debtors' note back after transferring it to the 2003 Trust. All of these arguments were based on the 2003 Trust *having* such interest, as supported by Note 1. One example of such argument is attached hereto (**EXHIBIT R**, Hearing Tr. 1/6/2014, AP, page 10 at 11), and other instances will be submitted if required

(C) entity that has a community claim.

11 U.S.C. § 101(10). This definition requires consideration of what constitutes a "claim," which conveniently is also a defined term in section § 101(5) of the Bankruptcy Code.

Section 101(5)(A) of the Bankruptcy Code defines a "claim" as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Even under this broad definition, Wells Fargo has not demonstrated its "right to payment" because, as discussed more fully below, it lacks the ability to seek the state law remedy of foreclosure. *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) (finding that a mortgage foreclosure was a "right to payment" against the debtor).

*In Re Mims*, 438B.R. 52, 56 - 7 (Bankr. S.D.N.Y. 2010). The MIMS court went on to find that

("Because Wells Fargo has not offered evidence that it owns the original Note, Wells Fargo lacks

standing to foreclose on the Mortgage and has therefore failed to demonstrate it is the holder of a

*claim*.) (*Id.*, internal quotes removes, emphasis added).

In the context a <u>request for relief from stay</u>, the Bankruptcy Court for the Eastern District of

Pennsylvania held, *inter alia*, that when a purported creditor's claim is challenged, and there is

insufficient evidence in support of the claimant's status as a party-in-interest, <u>the burden to prove it's</u>

<u>standing to file the claim lies with the claimant</u>:

I can resolve this dispute without reaching many of the issues described above. Notwithstanding 11 U.S.C. § 362(g), Everhome, as the moving party, bears the burden of proving that it is a party in interest under 11 U.S.C. § 362(d). See *Wilhelm*, 407 B.R. at 40001; see also *Tarantola*, 2010 WL 3022038, at *6; *Jacobson*, 402 B.R. at 367. The present record is insufficient to support a finding that Everhome is either the holder of the Mortgage or the agent of the mortgage holder, with authority to enforce the Mortgage in judicial proceedings. Therefore, Everhome has not met its burden of establishing its status as a party in interest that may seek relief from the automatic stay under 11 U.S.C. § 362(d).

*In re Alcide*, 450 BR 526 - Bankr. Court, ED Pennsylvania 2011; See also *In re Veal*, 450 B.R.

920 (B.A.P. 9th Cir. 2011) ("When debtors such as the Veals challenge an alleged servicer's standing to

file a proof of claim regarding a note governed by Article 3 of the UCC, that servicer must show it has

an agency relationship with a "person entitled to enforce" the note that is the basis of the claim. If it

does not, then the servicer has *not shown that it has standing to file the proof of claim*.") (*Veal,* internal

citations removed, emphasis added); See also *In re Minbatiwalla,* 424 B.R. 104 (Bankr. S.D.N.Y.

2010); In sustaining the debtor's objection to claim, and ruling the proof of claim expunged, the

bankruptcy court in *Minbatiwalla* held that ("Failure to attach the documentation required by Rule

3001 will result in the loss of the *prima facie* validity of the claim. [I]f the claimant fails to allege

facts in the proof of claim that are sufficient to support the claim, *e.g.,* by failing to attach

sufficient documentation to comply with Fed. R. Bankr.P. 3001(c), the claim is ... deprived of any

*prima facie* validity which it could otherwise have obtained.") (*Id.,* internal citations removed);

See also *In Re Paredes* 09-22261(rdd),(Bankr. S.D.N.Y. Oct. 9, 2009) and *In re Residential Capital,*

LLC, 480 B.R. 550, Bankr. S.D.N.Y. 2012, (No evidence, as required by B.R. 3001, to support the

claim. No proof of right to payment.); *In re Kemp,* 440 B.R. 624, Bankr. D.N.J. 2010 (Proof of Claim

expunged. Claimant did not prove it was the correct party entitled to payment.); *IN RE OBASI,* No. 10-

10494 (SHL), Bankr. S.D.N.Y. Dec. 19, 2011, (Proof of claim facially deficient under B.R. 3001); *In re*

*Tarantola,* 491 BR 111 - Bankr. Court, D. Arizona 2013 (No standing to file proof of claim.);

In a recent decision on September 30, 2016, the U.S. District Court, for the Southern District of

New York, in holding that a a newly appearing endorsement in blank was **most likely forged to**

**improve Wells Fargo's position**, the court sagaciously noted,

> If Wells Fargo already possessed the Note with a blank indorsement, which would be
> sufficient to confer standing to enforce the Note three days later, what would have
> necessitated the Assignment of Mortgage three days before filing the proof of claim?
> The decision to execute such an assignment is even more unusual given the likelihood
> that MERS lacked authority to assign a Deed of Trust as nominee for a defunct entity.

*In re Carrsow-Franklin,* 1701 US.Dist. Court, SD New York 2016. Precisely this same question

applies here in the instant case. Why, if Wells Fargo never really transferred the note to the 2003 Trust,

(which appears to be it's new 2016 position purported by Movant), would Wells Fargo be executing

assignments in 2013 and 2015 *from* the 2003 Trust to *itself*? Just like in the case above, acting on behalf

of a defunct entity would seem quite risky, and especially when the document is recorded in county

land records, as was the 2015 assignment. Indeed, the latter would seem a textbook violation of Md.

REAL PROPERTY Code Ann. § 7-401(d)(6), with potential consequences that include attorney fees

and treble damages, pursuant to § 7-406(b) and (c), respectively, and injunctive relief at the discretion

of the court pursuant to § 7-404(a)-(b).

Md. REAL PROP. § 7-401(d)

Mortgage fraud.- "Mortgage fraud" means any action by a person made with the intent to
defraud that involves:
..
(6) Filing or causing to be filed in the land records in the county where a residential real
property is located, any document relating to a mortgage loan that the person knows to contain a
deliberate misstatement, misrepresentation, or omission.

Md. REAL PROP. § 7-406
..
(b) Attorney's fees. -- A person who brings an action under this section and who is awarded
damages may also seek, and the court may award, reasonable attorney's fees.

(c) Treble damages. -- If the court finds that the defendant violated this subtitle, the court may
award damages equal to three times the amount of actual damages.

Perhaps the risk of such sanctions for filing false documents with the county is the reason the 2013

Balfanz Assignment (Ex. C, 11), also from the defunct entity, was not recorded by the, then (alleged)

transferee of POC 4-2, Carrington/Christiana Trust. Someone, however, had no problem filing the

equally bogus 2015 Assignment with the county. The court may want to know who that was. Movant

(PRP) purports to be holder of POC 4-2 on May 15, 2015 (Ex. H, claim transfer executed 4/29/2015),

and the document bears a header "Recording Requested By: WELLS FARGO BANK, N.A." and

return-to address of "FINAL DOCUMENTS, WELLS FARGO BANK, NA". The latter seeming a bit

odd even when viewd in isolation, as Wells Fargo purports to have relinquished it's interest in the loan

(for the second time) almost two (2) years prior, on June 11, 2013. (*Ex. N*, Transfer of Claim)

13

The U.S. District Court, in *Carrsow-Franklin (supra),* went on to affirm the bankruptcy court's ruling that Wells Fargo was not a party-in-interest, in it's own capacity, to the note. In yet another similar situation to the instant case, the bankruptcy court in *Carrsow-Franklin* explained why it is more likely that Wells Fargo later manufactured the evidence needed, as opposed to "finding" it as argued,

> In other words, why would only an outdated and unenforceable version of the Note have been logged in by Wells Fargo when it took over the file in February 2007 if the only enforceable version of the Note had in fact existed at that time (and should have existed since 2002)? **The far more likely inference**, instead, is that when the loan was transferred to Wells Fargo, the Note with the blank ABN Amro indorsement did not exist.

*In re Carrsow-Franklin*, 524 BR 33 - Bankr. Court, SD New York 2015.

21.    In the instant case, it is clear by viewing the face of the note that it was, at some point, purportedly indorsed to the 2003 Trust. Moreover, in addition to the arguments and judicial admissions of Wells Fargo and the parties in the other cases, Wells Fargo has, in fact, sent multiple letters to Debtors, and filed foreclosure documents in court identifying the 2003 Trust as the "owner", "holder", and/or "secured investor", some of which are attached hereto as "**EXHIBIT P**". Wells Fargo Office of the President employee Jason Mullen, sent Debtors a letter on October 15, 2010, stating as follows,

> "In your situation, your loan does not have one individual investor, rather has a group of investors, which we terms as a Mortgage backed Security (MBS) invested loan. Unfortunately, our MBS loans are currently not participating in the Making Home Affordable Program. Therefore, we are unable to allow your loan to be considered for the Home Affordable Modification Program (HAMP)."

(**EXHIBIT Q**, "Mullen Letter")[11]

22.    Where it is obvious that Debtors' note was once indorsed to the 2003 Tust (the indorsement still present even on the New Note), it must be understood that, at that point, the *only* party with any

---

11 The Mullen Letter in 2010, and other communications asserting the 2003 Trust as the investor, were in direct contradiction to the written and verbal information and instructions Wells Fargo provided the Howes' beginning in June 2009 that the investor was either Wells Fargo, or an unidentified party, but in either case that the Howes' were, in fact HAMP eligible and accordingly, to continue to submit multiple HAMP applications. A core contention of Debtors' is that they would likely not be here today, nor would they have been stuck in years of litigation, had Wells Fargo properly conducted the loss mitigation instead of misleading and misinforming the Howes', while their other options slipped away, only to abruptly reverse positions in 2010 once it was too late to pursue the other options.

authority to further endorse, or otherwise affect the indorsements, is the 2003 Trust. This is a basic, long established legal principal, as explained by one court as follows,

> Fred Klomann held the three notes in question for a period of time and then by special endorsement gave the notes to his daughter, Candace Klomann. Fred Klomann signed the notes and handed them to Candace. She examined the notes and then handed them back to Fred for collection. In April, 1970, Fred Klomann scratched out Candace's name in the special endorsement, inserted the name of his wife, Georgia Klomann, and delivered the three notes to Georgia.
> [..]
> "(1) A special endorsement specifies the person to whom or to whose order it makes the instrument payable. Any instrument specially indorsed becomes payable to the order of the special endorsee and may be further negotiated only by his endorsement."
>
> A review of the record in the instant case reveals Fred Klomann specially indorsed the promissory notes to his daughter, Candace, in August, 1967. The notes, therefore, could only be further negotiated by Candace. Examination of the record further reveals Candace, the special endorsee, has never negotiated the notes. Fred Klomann, in April, 1970, improperly scratched out Candace's name in the special endorsement and inserted the name of his wife, Georgia. Section 3-201 of the Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, par. 3-201) provides in pertinent part:
>
> > "(1) Transfer of an instrument vests in the transferee such rights as the transferor has therein."
>
> When Fred Klomann assigned the notes in question to his daughter he no longer had any interest in them. His attempted assignment to Georgia approximately 3 years later conveyed only that interest which he had in the notes, which was nothing

*Klomann v. Sol K. Graff & Sons,* 317 NE 2d 608 - Ill: Appellate Court, 1st Dist. 1974. One can only imagine the chaos that would ensue if anyone could convert order paper to bearer paper by simply crossing out the existing indorsements.

23.    There is significant evidence here that Movant's purported predecessor Wells Fargo transferred Debtors' note to the 2003 Trust, and in the other cases Wells Fargo and Movant not only do not dispute such transfer, but in fact, assert it as true. It is also clear from the record that Wells Fargo alleges a subsequent transfer to a different trust in 2013. What is nowhere in the record, is even a scintilla of evidence as to how Wells Fargo reacquired it's interest in between the two alleged transfers *from* Wells Fargo. It may be reasonably presumed that both of Wells Fargo's outbound transfers we "for value".

Accordingly, would the 2003 Trust investors be likely to just give it back to Wells Fargo for free? Perhaps some of the 2003 Trust investors suffered a loss. While merely theory, that notion is entirely plausible, as it is common knowledge that MBS trusts lost value during the period in question, as anyone with a 401K would affirm. More important here, however, is that Wells Fargo has never even argued that it *bought* back the right to payment under Debtors' note, only that it, as merely the Servicer at the time the 2003 Trust ceased to exist[12], somehow *reacquired* it. If Wells Fargo did, in fact, pay value for the right to payment under Debtors' note, one would think that such transaction would be relatively easy to prove; perhaps a canceled check?, a sale agreement?, a receipt?, but again <u>Wells Fargo has not even argued that it paid any value for it's purported interest in the note.</u>

24.  Now, apparently abandoning all prior theories of transferring the note to the 2003 Trust and then later, without viable explanation, somehow getting it back, Wells Fargo is instead simply altering the evidence, manufacturing new evidence, including new stamped indorsements and allonges that are likely forged and/or fraudulent, and omitting and attempting to void prior evidence it certified as true and correct. Movant appears to have no problem submitting the pseudo evidence created by Wells Fargo, albeit that Movant has yet to go on record certifying it's validity, authenticity, or accuracy.

25.  As recently as December 6, 2016, counsel to Movant has argued that the 2003 Trust was, at one point, the party interest to Debtor's note. At oral arguments in the 4th Circuit (Case 15-2332), the court questioned Movant's counsel, representing Carrington/Christiana Trust in that case, about the October 30, 2013 Balfanz Assignment *from* the 2003 Trust, and *to* Wells Fargo. In particular, the courts asks counsel "Is [the 2013 assignment] how [the note] came out of the pool/the trust?", to which counsel to Movant responded "[T]hat is how the loan came to be with Wells Fargo. And that's why Wells Fargo

---

12  It is undisputed fact that the 2003 Trust terminated on 1/25/2012, prior to Wells Fargo filing the foreclosure case, naming the 2003 Trust as Plaintiff, on 2/21/2012. Although Wells Fargo, and the other parties, avoided admitting this fact during the first year of litigation (Nov 2012 - Dec 2013), counsel finally conceded the fact on 1/6/14 (see Hearing Tr. 1/6/2014, AP 13-00510, page 10 at 5, **EXHIBIT R**)

16

filed an amended proof of claim."[13]. Here, in addition to Movant's counsel arguing that the 2003 Trust *was* the party in interest until October 30, 2013, thereby affirming that the note *was* indorsed 2003 trust, he further asserts that the <u>October 30, 2013</u> assignment was "why" Wells Fargo amended POC 4-2, which amendment occurred on <u>March 15, 2013</u>.  Again there is no explanation of how the 2003 Trust, defunct since January 25, 2012, could be taking part in transactions, authorizing execution of documents on it's behalf, or possessing and conveying assets, almost two years later.

26.  Debtors' herein deny that Movant has standing to file a claim in this case. Debtors further allege that the new purported indorsement in blank is forged for the purposes of improving the position of Movant and it's alleged predecessors in interest. Debtors challenge the authority under which the alterations to the face of the note were made, and attempted omission of the 2009 allonge via stamp. Debtors dispute the validity of new undated allonges and all of the documents attached to the Motion, and insist that Movant answer all of the questions arising from said documents, including those that are not included herein. Debtors further deny that any debt is owed to Movant.

27.  Movant, Wells Fargo, and the other parties are judicially estopped from now arguing an opposing position from those asserted in the other cases, both in their own evidence and in judicial admissions. The court may also find sanctionable the obvious fabrication of, and alteration of, evidence for the purpose of supporting the new position and theories.

28.  It is imperative that the court determine, at a minimum, (1) who made the alterations, (2) when the alterations were made, (3) under what authority were the alterations made, (4) when the purported stamped indorsement by Samuel C. Shelley was affixed, and under what authority, (5) the date that the 2009 allonge was stamped, and by whom, and whom authorized such stamp, and (6) when the new

---

13 A written transcript of the 12/6/2016 hearing in the 4th Circuit case is not yet available, however the audio transcript is freely and publicly available for download on that court's website. The statements cited here can be found (in context) between 21:35 and 22:40 in the audio transcript.

undated allonges were executed, and if prior to 2016, why were they omitted from all previous versions of the note?

29.  If Movant's new position is that the different note version existed prior to the note being lost by Wells Fargo, and accordingly that Wells Fargo never transferred the note to the 2003 Trust as previously asserted for four years, then the court should note that, on February 21, 2012 Wells Fargo, in fact, initiated a state foreclosure action, as Servicer, *on behalf* of the 2003 Trust. The 2003 Trust is identified as "Plaintiff" in that action, despite that the 2003 Trust entity did not exist on the day the action was filed or any day since then. In September 2016, Movant, taking advantage of the absence of stay upon the dismissal of Co-Debtor's case, but ignoring the subject mater pending before the 4th Circuit, also attempted to foreclose under the same 2012 caption, which is still active to this date, despite Wells Fargo's judicial admission that it's filing was a "mistake".

30.  Defending the frivolous September 2016 foreclosure sale cost Debtors $13,422.50[14] in attorney fees in the state case, not including attorney fees of $9,175.90[12] in the instant case, which has not even reached the 341 meeting. Debtors, and their family, have also suffered emotionally and physically as a result of anxiety, and loss of sleep in fear of losing their home along with hundreds of hours lost that could have otherwise been invested their business and/or family.

31.  Debtors sincerely wish to settle this matter and finally be able to resume their normal lives and focus on their family and business. Debtors can afford their mortgage and are capable of a reasonable settlement with the correct party, but under the circumstances, Debtors, understandably and for obvious reasons, only want to pay the party entitled to the payments. Given the facts and evidence submitted

---

14 See attorney invoices (**EXHIBIT N**). Debtors damages asserted in paragraph 21 are only those incurred directly as a result of Movant's wrongful actions in September 2016, and such assertions are made without prejudice to Debtor's future right to recovery of over $200,000 in attorney fees resulting from Wells Fargo's conduct and misrepresentations. Debtors may likely not have litigated at all had Wells Fargo not prosecuted the foreclosure in the name of a defunct entity. Debtors further would likely not continued litigation if Wells Fargo, upon reversing positions with POC 4-2, had not submitted evidence disproving it's own new asserted role as principal, especially given that reason Wells Fargo proffered for it's inability to resolve the matter prior to litigation, was that the loan was owned by the 2003 Trust.

herein, and on the record, the court should also consider the very real possibility that Movant, Debtor, and the investors of the 2003 Trust are all, separately, victims of the conduct and business practices of same former Servicer, Wells Fargo. However, if Movant suffered damages as a result of a transaction between itself and Wells Fargo, that does not give rise to a cause of action by Movant against Debtor. Movant is in the, inherently risky, business of buying problem notes. If Wells Fargo had nothing invested in the note, having already sold it to the 2003 Trust investors, it may have chosen to sell it to Movant at a steep discount, which would still be all profit for Wells Fargo. Here, it is Movant (PRP) that caused the specific injuries to Debtors, as described above in paragraph 29, and as described herein, Movant has displayed an unscrupulous willingness to attempt to collect a debt not due it, by it's actions of filing false documents in courts and other public agencies.

32. In the event of any error, omission, or missing attached exhibit to this response, Debtors request leave to amend, as may be justified by the limited time provided, and the fact the, currently *pro se*, Debtors both have multiple days jobs.

WHEREFORE, for the reasons herein, Debtor and Co-Debtor respectfully prays that this court deny the relief sought by Movant, and for such other relief as this court deems just.

Respectfully submitted,

_____    
Tonya H. Howes                12/20/2016  
Debtor

_____    
Jeffrey V. Howes              12/20/2016  
Co-Debtor

19

FILED

2016 DEC 21  AM 10: 35

U.S. BANKRUPTCY COURT
DISTRICT OF MARYLAND
GREENBELT

## **CERTIFICATE OF SERVICE**

I hereby certify that I will cause a copy of the foregoing to be sent on or before December 22, 2016, to the following persons by first class U.S. mail, postage prepaid, or courier to:

Kyle J. Moulding, Esquire
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707

Tonya H. Howes            12/20/2016
Debtor

**EXHIBIT A**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

In Re:   Tonya H Howes

Case No. 16-22829-WIL
Chapter 13

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

US   BANK   TRUST   NATIONAL
ASSOCIATION, AS TRUSTEE OF THE
PRP II PALS INVESTMENTS TRUST,
Movant   (SN   Servicing   Corporation,
Servicer)
vs.

Tonya H Howes, Debtor
Jeffrey V Howes, Non-Filing Co-Debtor
                    Respondent(s)

## MOTION FOR RELIEF FROM AUTOMATIC STAY
### Real Property at 7000 Meandering Stream Way, Fulton, Maryland 20759

Comes now, US BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE PRP II PALS INVESTMENTS TRUST, Movant (SN Servicing Corporation, Servicer) herein, by Kyle J. Moulding, Esq., its attorney and respectfully represents:

1.     This Motion is filed pursuant to 11 U.S.C. Sec. 362 d thru f, and 28 U.S.C. Sec. 1334 and Sec. 157, giving this Court jurisdiction to grant relief from the Automatic Stay for cause and/or to prevent irreparable damage to the interest of a secured creditor in the property of the Debtor and any co-debtor.

2.     Movant is the holder of a Note secured by a Deed of Trust dated November 30, 2001, and recorded among the land records of Howard County, Maryland, at Liber 5939 and folio 0610 and which encumbers the property of the Debtor at 7000 Meandering Stream Way, Fulton, Maryland 20759.

3.     The current amount due to the Movant is approximately $907,670.13, which includes: a principal balance in the amount of $580,598.76; interest in the amount of $230,225.21 through November 24, 2016; bankruptcy fees and costs in the amount of $1,026.00; an escrow deficit in the amount of $70,616.45; and Other (Other Fees) in the amount of $25,203.71.

4.     The Debtor has failed to pay the payments for the months of October 2016 to November 2016, so that the post-petition arrears are approximately $10,822.74, which include: payments in the amounts of $4,898.37 for the months of October 2016 through November 2016, current bankruptcy fees and costs in the amount of $1,026.00. The current monthly payment is

2013-37835

$4,898.37.

5.     The Movant is inadequately protected by the Debtor's failure to make the pre-petition and post-petition payments which may include an escrow for taxes and insurance.

6.     In his/her Schedules, the Debtor lists a current market value of $850,000.00 for the real property.  There is no equity in the real property above the secured debt and the real property has no value to the bankruptcy estate.

7.     Therefore, cause exists to grant relief from stay.  Movant lacks adequate protection and continues to be irreparably harmed by the continuation of the Stay of 11 U.S.C. Sections 362(a) and 1301, if applicable.

## NOTICE OF INTENT TO SUBMIT BUSINESS RECORDS

Creditor will submit business records as evidence at any scheduled hearing, as allowed under Fed. R. Bankr. P. 9017 and FRE 902(11). These business records are available for inspection by the adverse party upon demand.

WHEREFORE, the Movant prays this Honorable Court to issue an Order

1.     Lifting the Automatic Stay as to the Debtor's property at 7000 Meandering Stream Way, Fulton, Maryland 20759, so that the Movant can proceed with the foreclosure of its Deed of Trust; or alternatively

2.     For such other and further relief as the Court deems appropriate.

/s/  Kyle J. Moulding, Esq. (kmg)
Kyle J. Moulding, Esq.
Attorney for Movant
Bar No. 30148
McCabe, Weisberg & Conway, LLC
312 Marshall Avenue, Suite 800
Laurel, MD 20707
301-490-1196
bankruptcymd@mwc-law.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, first class, postage prepaid, on November 16, 2016, to Tonya H Howes at 8101 Sandy Spring Rd, #240, Laurel, Maryland 20707 and Jeffrey V Howes at 7000 Meandering Stream Way, Fulton, Maryland 20759. Copies were sent electronically via the CM/ECF system to Robert Haeger, Esq., Attorney for Debtor at ecf@haegerlaw.com,     and     Nancy     Spencer     Grigsby,     Chapter     13     Trustee,     at grigsbyecf@ch13md.com

/s/Kyle J. Moulding, Esq.

# EXHIBIT B

| | | | | Interest Method: | Arrears | Post Petition Pay History | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| REDACTED | | | | Interest Rate: | 5.750% | | | | | | | |
| Dt. Rec'd | Days | Dt. Due | Total Pd. | Amt. Pd. | Mo Acc Int. | Cum Acc Int. | Pd. Interest | Principal | Escrow Bal | Escrow Disb/Pmt | Arrearage Balance | Arrearage Disb/Pmts | Late Balance | Late Fees/pmts | Suspense | Prin. Bal |
| | | | | | | 205,154.78 | | | 0.00 | | 0.00 | | 0.00 | | 0.00 | 580,598.76 |
| 09/25/16 | | 02/01/10 - 09/01/16 | 303,457.60 | 303,457.60 | 0.00 | 205,154.78 | 205,154.78 | 98,302.82 | 0.00 | 0.00 | (303457.60) | (303457.60) | 0.00 | 0.00 | 0.00 | 482,295.94 |
| 09/25/16 | | Arr Late | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (306871.48) | (3413.88) | 0.00 | 0.00 | 0.00 | 482,295.94 |
| 09/25/16 | | Arr Late (P6) | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (310854.34) | (3982.86) | 0.00 | 0.00 | 0.00 | 482,295.94 |
| 09/25/16 | | Arr Fees | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (323354.409) | (11500.06) | 0.00 | 0.00 | 0.00 | 482,295.94 |
| 09/25/16 | | Arr Legal Fees | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (326697.909) | (4343.50) | 0.00 | 0.00 | 0.00 | 482,295.94 |
| 09/25/16 | | Arr FC Expenses | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (329471.65) | (2773.75) | 0.00 | 0.00 | 0.00 | 482,295.94 |
| 09/25/16 | | Arr Escrow | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (409961.16) | (82489.51) | 0.00 | 0.00 | 0.00 | 482,295.94 |
| | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (409961.16) | 0.00 | 0.00 | 0.00 | 0.00 | 482,295.94 |
| 10/17/16 | | Late | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (409961.16) | 0.00 | (189.66) | (189.66) | 0.00 | 482,295.94 |
| | | Due for 10/01/16 | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (409961.16) | 0.00 | (189.66) | 0.00 | 0.00 | 482,295.94 |
| | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (409961.16) | 0.00 | (189.66) | 0.00 | 0.00 | 482,295.94 |
| | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (409961.16) | 0.00 | (189.66) | 0.00 | 0.00 | 482,295.94 |

45939 00610

Return To:
THE COLUMBIA BANK
9151 BALTIMORE NATIONAL
PIKE ELLICOTT CITY, MD
21042



Prepared By:
BARB MCCLANAHAN

MELVIN L. SCHNEIDER
7701  GREENBELT RD. #202
GREENBELT, MD 20770

———————————— [Space Above This Line For Recording Data] ————————————

PURCHASE MONEY as to $215,000.00

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated      November 30, 2001
together with all Riders to this document.
**(B)** "Borrower" is JEFFREY V HOWES and TONYA H HOWES

Borrower is the trustor under this Security Instrument.
**(C)** "Lender" is THE COLUMBIA BANK

Lender is a corporation
organized and existing under the laws of      THE STATE OF MARYLAND



MARYLAND-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3021  1/01          0

-6(MD) (0005)
Page 1 of 13          MW 04/00 03     Initials:
          VMP MORTGAGE FORMS



35939 0611

Lender's address is 5585 STERRETT PLACE, COLUMBIA, MD 21044

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is MICHAEL T. GALEONE AND MATTHEW T. BECKER.

(E) "Note" means the promissory note signed by Borrower and dated    November 30, 2001
The Note states that Borrower owes Lender Six Hundred Ninety Six Thousand One
Hundred Thirty and                                                                          Dollars
(U.S. $696,130.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    September 1, 2002
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

REDACTED

-6(MD) (0006)                            Page 2 of 15                    Initials: _____            Form 3021   1/01

0

BR5939 FOLIO 0612

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

Land Records         of HOWARD  County        :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]
LOT 45 IN A SUBDIVISION KNOWN AS "PINDELL WOODS, LOTS 1 THRU XXX XXX  47 and
PRESERVATION PARCELS A THRU F" AS RECORDED AMONG THE LAND RECORDS OF
HOWARD COUNTY, MARYLAND IN PLAT NUMBERED 14922.

Parcel ID Number:                             which currently has the address of
7001 MEANDERING STREAM WAY                                     [Street]
FULTON                            [City], Maryland     20759    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

REDACTED                                          0

6(MD) (0006)                      Page 3 of 15                          Form 3021  1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

**REDACTED**



-6(MD) (0008)                    Page 4 of 18                    Initials: _____                    Form 3021   1/01

0

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



REDACTED

-6(MD) (0008)          Page 6 of 15          Initials: ____          Form 3021  1/01

0

BK5939 FOLIO0615

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

REDACTED

-6(MD) (0008)

Page 6 of 15

Initials _____

Form 3021 1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛  ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ 

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

**REDACTED**

0

-6(MD) (0005)                    Page 7 of 15                    Initials: _____                    Form 3021   7/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

REDACTED

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

REDACTED

0

-6(MD) (0005)        Page 9 of 15        Initials: _____        Form 3021  1/01

25939 PAGE0619

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

REDACTED

0

-6(MO) (0005)                    Page 10 of 15                    Initials:                    Form 3021  1/01

35939 PAGE 0620

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

REDACTED

0

-6(MD) (0005)                    Page 11 of 15                    Form 3021   1/01

ЈЕ25939 РЕЈ00621

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the



REDACTED

-6(MD) (0006)                    Page 13 of 18                Initials: _____                Form 3021   1/01

35939 01000622

default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of  5.0000        % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Possession of the Property. Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.



REDACTED

0

-8(MD) (0005)                        Page 13 of 15            Initials: ___            Form 3021   1/01

LIBER 5 9 3 9 FOLIO 0 6 2 3

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                            JEFFREY V HOWES                -Borrower

_____          _____ (Seal)
                                            TONYA H HOWES                  -Borrower

_____ (Seal)          _____ (Seal)
                   -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                   -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                   -Borrower                                   -Borrower

REDACTED

-6(MD) (0005)                     Page 14 of 15                    Form 3021   1/01

345939 00624

STATE OF MARYLAND,            Prince George's              County ss:
    I Hereby Certify, That on this    30    day of    November, 2001 before me, the subscriber, a
Notary Public of the State of Maryland, in and for the    County of Montgomery
personally appeared JEFFREY V HOWES and TONYA H HOWES

known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledge that he/she/they executed the same for the purposes therein contained.
    AS WITNESS: my hand and notarial seal.
My Commission Expires:
December 18xxxx2xxxx
    4/1/05

STATE OF Maryland              ,    Prince George's              County ss:
    I Hereby Certify, That on this 30    day of    November, 2001          ,before me, the subscriber,
a Notary Public of the State of Maryland and for the    County of Montgomery
personally appeared
          Andrea Henske

the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the
consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum
of money advanced at the closing transaction by the secured party was paid over and disbursed by the party
or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of
fund in the closing transaction or their respective agent at a time not later than the execution and delivery
by the Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties
secured and is duly authorized to make this affidavit.
    AS WITNESS: my hand and notarial seal.
My Commission Expires:
December 18xxxxx2xxxxx
    4/1/05

This is to certify that the within instrument was prepared By /
THE COLUMBIA BANK

                    BARB MCCLANAHAN

REDACTED

(MD1 .00003)          Page 15 of 15          Form 3021  1/01

JC:5939 FC00625

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this             30th             day of
November, 2001             , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security
Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
THE COLUMBIA BANK

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

7000 MEANDERING STREAM WAY, FULTON, MD 20759
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in

(the "Declaration"). The Property is a part of a planned unit development known as
PINDELL WOODS

[Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii)
any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

REDACTED
MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3150 1/01
Page 1 of 3
7R (0008)    VMP MORTGAGE FORMS    REDACTED          Initials: [signature]          0

REDACTED

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

REDACTED

-7R (0008)                    Page 2 of 3            Initials:           Form 3150 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.



_____ (Seal)          _____ (Seal)
JEFFREY V HOWES          -Borrower       TONYA A HOWES          -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                              -Borrower

REDACTED

                                                                    0

-7R (0008)                    Page 3 of 3              Form 3150 1/01

LIBER 5939 FOLIO 0628

### TRANSFER AND RECORDATION TAX CALCULATION
### DEED OF TRUST FROM JEFFREY V. HOWES AND TONYA H. HOWES
### TO MICHAEL T. GALEONE AND MATTHEW T. BECKER
### TRUSTEES FOR THE COLUMBIA BANK

Full loan amount: $696,130.00

Purchase money: $215,000.00 (Deed recorded in Howard County)

Amount secured by Howard County property: $696,130.00

Amount secured by Prince George's County property: $335,000.00

Non-purchase money secured in Howard County only: $361,130.00

Non-purchase money secured in both counties: $120,000.00

Total Value of both properties: $665,550.00

Value of Howard County property: $215,000.00 (32.5%)

Value of Prince George's county property: $450,550.00 (67.5%)

Additional Transfer tax due to Howard County: 0.00

Additional Transfer tax due to Prince George's County: $1,134.00 (67.5% of 120,000.00 = 81,000 x 1.4% = $1,134.00)

Additional Recordation tax due to Howard County: $2,002.50 (361.5 x 5.00 = 1,807.50; 32.5% of 120,000.00 = 39,000.00; 39 x 5 = 195.00).

Additional Recordation tax due to Prince George's County: $356.40 (67.5% of 120,000.00 = 81,000.00; 81 x 4.4 = 356.40).



LIBER 07153 FOLIO 099



PLEASE RETURN TO:
THE COLUMBIA BANK
9585 STERRETT PLACE, STE. 100
COLUMBIA, MD 21044

### ASSIGNMENT OF SECURITY INSTRUMENT

REDACTED

KNOW ALL MEN BY THESE PRESENTS THAT THE COLUMBIA BANK
organized and existing under the laws of THE STATE OF MARYLAND
party of the first part, in consideration of the sum of ONE DOLLAR ($1.00) and other good and valuable consideration in
lawful money of the United States to it in hand paid by Wells Fargo Home Mortgage, Inc., a California Corp.
3601 MINNESOTA DR HACK4701-022, BLOOMINGTON, MN 55435

party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby
acknowledged, has granted, bargained, sold, assigned, transferred and set over and by these presents does hereby grant,
bargain, sell, assign, transfer and set over unto the said party of the second part that certain Security Instrument executed
by JEFFREY V HOWES and TONYA H HOWES

dated    11/30/01                          and to be filed for record in the Clerk's office of the Circuit Court of the
County of HOWARD                    , State of Maryland              on the following described property:

LOT 45 IN A SUBDIVISION KNOWN AS "PINDELL WOODS, LOTS 1 THRU 45 AND
PRESERVATION PARCELS A THRU F" AS RECORDED AMONG THE LAND RECORDS OF
HOWARD COUNTY, MARYLAND IN PLAT NUMBERED 14922.



together with the Note or obligation described in said Security Instrument and the money due and to become due thereon,
with interest accrued and owing thereon.

TO HAVE AND TO HOLD the same unto the said party of the second part, its successors and assigns forever, the said
party of the first part has caused these presents to be signed in its name by its officer, and its corporate seal to be affixed
this    16 h        day of    April 2003

WITNESSES:                                              THE COLUMBIA BANK

                                                       By:
                                                       MICHAEL T. GALEONE
                                                       Its:    EXECUTIVE VICE PRESIDENT
                                                               (SEAL)

State of    MARYLAND                      )
                                          ) SS:
County of   HOWARD                        )

I, an Officer duly authorized to take acknowledgements of deeds according to the laws of the State of MARYLAND
, duly qualified and acting, hereby certify that MICHAEL T. GALEONE, EXECUTIVE VICE PRESIDENT
personally known to me, this day acknowledged before me that said person executed the foregoing Assignment of Security
Instrument as such officer of said organization and that said person affixed thereto the Official Seal of the said
organization and I further certify that I know the said person making said acknowledgement to be the individual described
in and who executed said Assignment of Security Instrument.

IN WITNESS WHEREOF, I hereunto set my hand and Official Seal in said county and state this    16th        day
of    Apr 1 2003        .

                    (SEAL)

                                                       Notary Public

My commission expires:    9-25-04

This instrument was prepared by:    BARB MCCLANAHAN

STATE OF MARYLAND
COUNTY OF __HOWARD__

I hereby certify, that on this __16TH__ of __APRIL_____, 2003, before me, the subscriber, a Notary Public of the State of Maryland, in and for the County of __BALTIMORE__ personally appeared ____MICHAEL T. GALEONE, EXECUTIVE VICE PRESIDENT_____ known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledge that he executed the same for the purposes therein contained.

AS WITNESS: My hand and notarial seal

My Commission Expires: 9-25-04

_____
Notary Public





REDACTED

BK 9083 PG 417 

RECORDING REQUESTED BY
AND·WHEN RECORDED MAIL TO:

Wells Fargo Bank, N.A.
3601 MINNESOTA DRIVE, STE 200
BLOOMINGTON, MN 55435
Attn: MAC # x4701-022


REDACTED
Prepared By: VIET TRAN


REDACTED

_____Space Above this Line for County Recorder_____

### Assignment of Deed of Trust

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:

First Union National Bank, As Trustee
4527 Metropolitan Court Suite C, Frederick, MD 21704

all beneficial interest under that certain Deed of Trust dated:
executed by:  JEFFREY V HOWES and TONYA H HOWES, Trustor

Beneficiary:  The Columbia Bank

REDACTED

and recorded as instrument No.  on May 09, 2003 in Book: 07153
Page: 094 , of Official Records in the County Recorders office of
MD , describing land therein as:                          Howard County
LEGAL DESCRIPTION AS SHOWN AND/OR ATTACHED TO THE DEED OF TRUST REFERRED TO HEREIN.
Pin or Tax ID #:                    LoanAmount:    $650,000.00
Property Address: 7000 MEANDERING STREAM WAY, FULTON, MD 20759
TOGETHER with the note or notes therein described or referred to, the money due and to become due
thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Wells Fargo Bank, N.A., successor by merger
to Wells Fargo Home Mortgage, Inc.

Dated: March 16, 2005

State of Minnesota     ) ss.                    GEORGIANA RICE
County of Hennepin                              Vice President Loan Documentation, Wells Fargo Bank,
                                                N.A., successor by merger to Wells Fargo Home
                                                Mortgage, Inc.

On    March 16, 2005                                              before me
personally appeared GEORGIANA RICE, Vice President Loan Documentation  of Wells Fargo Bank, N.A., successor by merger to
Wells Fargo Home Mortgage, Inc. known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies). entity upon behalf of which the person(s) acted,
executed the instrument.  WITNESS my hand and official seal.

                                                FOR NOTARY SEAL OR STAMP

_____ (Seal)

VIET TRAN

This is to certify that the within instrument has been prepared by a party to the instrument.

                                                VIET TRAN

**REDACTED**

(Space above this line for recorder use only)

## ASSIGNMENT OF DEED OF TRUST

For value received, **Wells Fargo Bank, N.A., s/b/m Wachovia Bank, N.A., f/k/a First Union National Bank, As Trustee**, herein "Assignor", whose address is 301 SOUTH TRYON STREET, WACHOVIA PLAZA CHARLOTTE, NC, the undersigned hereby grants, assigns, and transfers to:

**US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securites Corporation, Mortgage Pass-Through Certificates, Series 2003-4**
4801 Frederica Street, Owensboro, KY 42301

herein "Assignee" its successors and/or assigns, all its right, title, and all beneficial interest under that certain Deed of Trust, herein "Security Instrument" executed by Jeffrey V Howes and Tonya H Howes, dated November 30, 2001, in the amount of $696,130.00 and given to The Columbia Bank and recorded on January 22, 2002 as Document or Instrument Number 000383 and/or in Book 5939, Page 0610 in the Recorder's office of the County of Howard, Marylan i, describing land therein as:

Property Address:    7000 Meandering Stream Way, Fulton, MD 20759
Property Tax ID or PIN:   n/a
Legal Description:    See Attached

Signed t is July 20, 2011

Wells Fargo Bank, N.A., s/b/m Wachovia Bank, N.A.,
f/k/a First Union National Bank, As Trustee

Bao Thao

VICE PRESIDENT LOAN DOCUMENTATION

## MARYLAND ALL PURPOSE NOTARY ACKNOWLEDGEMENT

STATE OF MINNESOTA    }
COUNTY OF DAKOTA    }

On this 7/20/2011 before me, Steven T Schmidt, personally appeared: Bao Thao, VICE PRESIDENT LOAN DOCUMENTATION, Wells Fargo Bank, N.A., s/b/m Wachovia Bank, N.A., f/k/a First Union National Bank, As Trustee, ☐ personally known to me - OR - ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Document drafted and prepared by; when recorded, return to:

Wells Fargo Home Mortgage
Ashley Dauwalter REDACTED
PO Box 1629
Minneapolis, MN 55440-9790

**REDACTED**

WITNESS my hand and official seal.

Notary Steven T Schmidt

STEVEN T SCHMIDT
Notary Public
Minnesota
My Commission Expires Jan 31, 2014

IMP FD SURE 1    48.00
RECORDING FEE    20.00

This is to certify that the within instrument has been prepared by a party to the instrument.

Name: Ashley Dauwalter

**REDACTED**

Page 1 of 2

**Legal Description**

LOT 45 IN A SUBDIVISION KNOWN AS "PINDELL WOODS, LOTS 1 THRU XXXXXXX  47 and
PRESERVATION PARCELS A THRU F" AS RECORDED AMONG THE LAND RECORDS OF
HOWARD COUNTY, MARYLAND IN PLAT NUMBERED 14922.

LIBER 6274 FOLIO 382



Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD #100
REDACTED
EAGAN, MN  55121-4400

**EXHIBIT B, 26**

REDACTED

## CORPORATE ASSIGNMENT OF DEED OF TRUST

REDACTED

Howard, Maryland
"HOWES"

**RECORD 1ST**

Date of Assignment: May 5th, 2015
Assignor: WELLS FARGO BANK, N.A. AS ATTORNEY-IN-FACT FOR U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO WACHOVIA BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-4 at 60 LIVINGSTON AVENUE, ST PAUL, MN, 55107
Assignee: WELLS FARGO BANK, N.A. at 1 HOME CAMPUS, DES MOINES, IA  50328

Executed By: JEFFREY V HOWES AND TONYA H HOWES  To: THE COLUMBIA BANK
Date of Deed of Trust:  11/30/2001 Recorded:  01/22/2002 in Book/Reel/Liber: 5939 Page/Folio: 0610 as Instrument No.: 000383  In the County of Howard, State of Maryland.

Property Address: 7000 MEANDERING STREAM WAY, FULTON, MD  20759

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said assignor hereby assigns unto the above-named assignee, the said Deed of Trust having an original principal sum of $695,130.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor hereby grants and conveys unto the said assignee, the assignor's interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said assignee forever, subject to the terms contained in said Deed of Trust.

IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written

WELLS FARGO BANK, N.A. AS ATTORNEY-IN-FACT FOR U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO WACHOVIA BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-4 POA: 09/30/2013 in Book/Reel/Liber: 15250 Page/Folio: 491
On __ 5/8/15

By: _X_P_B_M_____
        Kyle Phillip Blazovich
Vice President Loan Documentation

**EXHIBIT B, 26**



LIBER 16274 PAGE 383

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

On 05/18/15, before me, **Dereje D. Badada**, a Notary Public in the State of Minnesota, personally appeared **Kyle Phillip Blazovich**, Vice President Loan Documentation, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Dereje D. Badada
Notary Expires: 1/31/2017

(This area for notarial seal)

DEREJE D. BADADA
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2017

PREPARED BY: WELLS FARGO BANK, N.A.

REDACTED



Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD #100
EAGAN, MN 55121-1460

**CORPORATE ASSIGNMENT OF DEED OF TRUST**

Howard, Maryland
"HOWES"

Date of Assignment: May 5th, 2015

**RECORD 2nd**

Assignor: WELLS FARGO BANK, N.A. at 1 HOME CAMPUS, DES MOINES, IA 50328

Assignee: CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2013-2 at 1610 E ST. ANDREW PLACE STE B150, SANTA ANA, CA 92705

Executed By: JEFFREY V HOWES AND TONYA H HOWES  To: THE COLUMBIA BANK
Date of Deed of Trust: 11/30/2001 Recorded: 01/22/2002 in Book/Reel/Liber: 5939 Page/Folio: 0610 as Instrument No.: 000383  In the County of Howard, State of Maryland.

Property Address: 7000 MEANDERING STREAM WAY, FULTON, MD 20759

Legal: Legal Description as shown and/or attached to the mortgage or deed of trust referred to herein.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said assignor hereby assigns unto the above-named assignee, the said Deed of Trust having an original principal sum of $696,130.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor hereby grants and conveys unto the said assignee, the assignor's interest under the Deed of Trust

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said assignee forever, subject to the terms contained in said Deed of Trust

IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

WELLS FARGO BANK, N.A.
On __5/18/15__

By _____
Kyle Phillip Blazovich
Vice President Loan Documentation

LR - Assignment
Recording Fee            20.00
Grantor/Grantee Name:
Howes

BK 16274 PG 385

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

On  05 18 15 , before me,     Dereje D. Badada         , a Notary Public in the State of
Minnesota, personally appeared _____ Kyle Phillip Blazovich ____, Vice President Loan
Documentation, personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal,

_Dereje D. Badada_
Notary Expires: 1 / 31/ 2017

DEREJE D. BADADA
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2017

(This area for notarial seal)

PREPARED BY: WELLS FARGO BANK, N.A.

REDACTED

LR - DOT/Mortgage
Recording Fee        20.00
Grantor Name: howes
Reference/Control #: 92
LR - DOT/Mortgage



**REDACTED**

PREPARED BY ~~AND RETURN TO:~~
Document Recording Services
PO Box 3008
Tallahassee, FL 32315

**REDACTED**

# RECORD 2nd

### Assignment of Deed of Trust

**REDACTED**

For Valuable Consideration, the undersigned, CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2013-2 500 Delaware Avenue, 11th Floor, Wilmington, DE 19801 (Assignor) by these presents does assign and set over, without recourse, to STANWICH MORTGAGE ACQUISITION COMPANY II, LLC c/o The Palisades Group LLC, 11755 Wilshire Blvd, Suite 1700, Los Angeles, CA 90025 (Assignee) the described deed of trust with all interest, all liens, any rights due or to become due thereon, executed by JEFFREY V HOWES AND TONYA H HOWES to THE COLUMBIA BANK. Trustee: MICHAEL T GALEONE AND MATTHEW T. BECKER  Said deed of trust Dated: 11/30/2001 is recorded in the State of MD, County of Howard on 1/22/2002, Liber 5939 Folio 0610 AMOUNT: $ 696,130.00     Property Address: 7000 MEANDERING STREAM WAY, FULTON, MD  0759

**REDACTED**

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed as a sealed instrument by its proper officer. Executed on: **4-9-15**

CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2013-2  By: ~~The Palisades Group, LLC,~~ Its Appointed Attorney in Fact

*STANWICH MORTGAGE ACQUISITION COMPANY II, LLC*

By: _____

Troy Grande, Authorized Signatory

**REDACTED**

*to record concurrently*
The Power of Attorney ~~was filed in~~ Howard County, Maryland

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of California
County of Los Angeles
On **4|9|15**  before me, Gabriella S. Loughnot, Notary Public, personally appeared Troy Grande, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Gabriella S. Loughnot
Notary public, Gabriella S. Loughnot
My commission expires: July 21, 2017

GABRIELLA S. LOUGHNOT
COMM. #2034242
Notary Public - California
Los Angeles County
My Comm. Expires July 21, 2017

Return to:
Corporation Service Company
P.O. Box 2969
Springfield, IL 62708

**REDACTED**



MD  Howard

**REDACTED**

LR – DDT/Mortgage
Recording Fee        20.00
Grantor Name: howes
Reference/Control #: 93
LR – DDT/Mortgage
Surcharge            40.00
SubTotal:            60.00

**REDACTED**

PREPARED BY ~~AND RETURN TO:~~
Document Recording Services
PO Box 3008
Tallahassee, FL 32315

**REDACTED**

# RECORD 3rd
**Assignment of Deed of Trust**

**REDACTED**

For Valuable Consideration, the undersigned, STANWICH MORTGAGE ACQUISITION COMPANY II, LLC c/o The Palisades Group LLC, 11755 Wilshire Blvd, Suite 1700, Los Angeles, CA 90025 (Assignor) by these presents does assign and set over, without recourse, to US BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE PRP II PALS INVESTMENTS TRUST 7144 E Stetson Dr, Suite 410, Scottsdale, AZ 85251 (Assignee) the described deed of trust with all interest, all liens, any rights due or to become due thereon, executed by **JEFFREY V HOWES AND TONYA H HOWES** to THE COLUMBIA BANK. Trustee MICHAEL T. GALEONE AND MATTHEW T. BECKER Said deed of trust Dated: 11/30/2001 is recorded in the State of MD, County of Howard on 1/22/2002, Liber 5939 Folio 0610 AMOUNT: $ 696,130.00 Property Address: 7001 MEANDERING STREAM WAY, FULTON, MD 20759
IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed as a sealed instrument by its proper officer. Executed on: 4-15-15

**REDACTED**

STANWICH MORTGAGE ACQUISITION COMPANY II, LLC

By: _____

Troy Grande, Authorized Signatory



---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California
County of Los Angeles
On 4/15/15 before me, Gabriella S. Loughnot, Notary Public, personally appeared Troy Grande, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

_____
Notary public, Gabriella S. Loughnot
My commission expires: July 21, 2017

GABRIELLA S. LOUGHNOT
COMM. #2034242
Notary Public - California
Los Angeles County
My Comm. Expires July 21, 2017

Return to:
Corporation Service Company
P.O. Box 2969
Springfield, IL 62708

**REDACTED**

MD  Howard



LIBER 07153 FOLIO 094


**REDACTED**

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this        16th        day of
April, 2003        , between JEFFREY V HOWES and TONYA H HOWES



("Borrower") and

THE COLUMBIA BANK

("Lender"), amends and
supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated
November 30,2001        and recorded in Book or Liber 5939   , at page(s) 610       ,
of the        Land        Records of HOWARD, MD                    \
[Name of Records]        [County and State, or other Jurisdiction]
and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real
and personal property described in the Security Instrument and defined therein as the "Property," located at

7000 MEANDERING STREAM WAY, FULTON, MD 20759
[Property Address]

**REDACTED**

LOAN MODIFICATION AGREEMENT-Single Family- Fannie Mae Uniform Instrument

**952R** (0005)        Form 3179   1/01
Page 1 of 4   MW 05/00   Initials: _____
VMP MORTGAGE FORMS        REDACTED

**REDACTED**

the real property described being set forth as follows:

LOT 45 IN A SUBDIVISION KNOWN AS "PINDELL WOODS, LOTS 1 THRU 45 AND PRESERVATION PARCELS A THRU F" AS RECORDED AMONG THE LAND RECORDS OF HOWARD COUNTY, MARYLAND IN PLAT NUMBERED 14922.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 04/16/03                                    , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 650,000.00 consisting of the amount(s) loaned to Borrower by Lender and any interest capitalized to date.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 5.7500          %, from April 16, 2003                              Borrower promises to make monthly payments of principal and interest of U.S. $ 3,793.22 beginning on the First          day of June          2003          , and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on May 1, 2033                              (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

Borrower will make such payments at 6585 STERRETT PLACE, COLUMBIA, MD 21044,

or at such other place as Lender may require.

REDACTED

Initials:

052R (0505)                        Page 2 of 4                        Form 3178 1/01

LIBER 07153 FOLIO 096

3.  If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    (b)  all terms and provisions of any adjustable rate rider or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

REDACTED

0

LIBER 07153 FOLIO 0097

_____ (Seal)     _____ (Seal)
JEFFREY V HOWES          -Borrower    TONYA H HOWES BY JEFFREY V    -Borrower
                                      HOWES HER ATTORNEY-IN-FACT

_____ (Seal)     _____ (Seal)
                         -Borrower                              -Borrower

_____ (Seal)     _____ (Seal)
                         -Borrower                              -Borrower

_____ (Seal)     _____ (Seal)
                         -Borrower                              -Borrower


THE COLUMBIA BANK                          (Seal)
                                          -Lender
By: _____
    MICHAEL T. GALEONE
    EXECUTIVE VICE PRESIDENT

_____ [Acknowledgments To Be Attached] _____

REDACTED

-R52R (0005)                 Page 4 of 4                 Form 3179 1/01

LIBER 07153 FOLIO 098

STATE OF MARYLAND
COUNTY OF __Prince George's__

I hereby certify, that on this __16__ of __April__ , 2003, before me, the
subscriber, a Notary Public of the State of Maryland, in and for the County of_____
personally appeared __Jeffrey V. Howes, individually and as attorney in fact__ for Tonya H.
known to me or satisfactorily proven to be the person whose name is subscribed to the          Howes
within instrument and acknowledge that he executed the same for the purposes therein
contained.

AS WITNESS:  My hand and notarial seal

My Commission Expires: __10/1/06__
__04/01/05__

Melvin L. Schneider

REDACTED

REDACTED
REDACTED

# CONSTRUCTION NOTE

November 30, 2001

7000 MEANDERING STREAM WAY, FULTON, MD 20759
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for this loan, I, the undersigned borrower or borrowers who shall be referred to in the singular, promise to pay U.S.    $696,130.00                   ("principal"), plus interest, to the order of the Lender. The Lender is The Columbia Bank.    I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest shall accrue daily on that part of principal which has been advanced and has not been paid. Interest will be charged beginning on the date of this Note and continuing until the full amount of principal has been paid. Beginning on the date of this Note, I will pay interest at   6.0000      % per annum. This rate is called the "Initial Interest Rate." The interest rate I will pay will change as and when the Index changes. The Index is the per annum rate published on the first publication date of each calendar month as the Prime Rate in The Wall Street Journal in its compilation of key United States and foreign annual interest rates. If more than one Prime Rate is reported, the highest rate reported shall be the Prime Rate. The interest rate shall never exceed    11.0000      % per annum and never shall be less than     6.0000      % per annum. If the Index is discontinued or substantially altered, the Note Holder may, at its option, choose another index made available to me and verifiable by me and beyond the Note Holder's control. If this happens, the substitute index will, for the purposes of this Note, be considered to be the "Index," although it may be necessary to adjust the number of percentage points above the Index the interest rate will be in order to make the interest rate under the new Index comparable to the interest rate under the prior index. The Note Holder will calculate my interest rate by adding  1.0000   % to the Index.

## 3. PAYMENTS

I will pay interest by making payments every month. I will make my monthly interest payments on the 1st    day    of    each    month    beginning    on      January 1, 2002            . On
 September 1, 2002         I will pay all principal, unpaid interest and any other amounts I owe under this Note in full. This date is called the "Maturity Date." I will make my monthly payments at
 9595 STERRETT PLACE, COLUMBIA, MD 21044
or at a different place if required by the Note Holder.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. I may make a full prepayment or a partial prepayment without paying any penalty. If I make a partial prepayment, there will be no delays in the due dates of my monthly payments unless the Note Holder agrees in writing to those delays.

## 5. LOAN CHARGES

To the extent the charges described in this paragraph apply and actually are incurred by the Note Holder, I may pay the following charges in connection with this loan: loan fees, finder's fees and points; attorney's fees for services rendered in connection with the preparation, closing or disbursement of this loan; any expense, tax or charge paid to governmental agencies; examination of title, appraisal or other costs necessary or appropriate to the security of the loan; premiums for optional credit life, credit disability, involuntary unemployment benefit and similar insurance coverage; premiums for property insurance, title insurance and credit loss insurance purchased from an insurer chosen by me; and any other charges permitted by applicable law.

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits; and (ii) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial payment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED AND DEFAULT

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5% of the overdue part of my payment of interest. I will pay this late charge only once on each late payment.

(B) Default

If (1) I do not pay the full amount of each monthly payment on its due date, or (2) any bankruptcy, insolvency or receivership proceeding is commenced by or against me and such petition is not dismissed within ten (10) days, or (3) I die, or (4) a default occurs under the Residential Construction Loan Agreement with the Lender I am signing today ("Loan Agreement"), or (5) I fail to keep any of the promises I have made in or an event permitting acceleration occurs under the Deed of Trust which secures this Note ("Deed of Trust"), or (6) I made any material misrepresentation or omitted any material information in my application and other material supplied to the Lender in connection with this loan, I will be in default. If I am in default, the Note Holder may require me to pay the full amount of principal remaining unpaid, plus all interest and other charges due on this Note. The Note Holder also may exercise all of its rights and remedies under this Note, the Deed of Trust, the Loan Agreement and applicable law.

(C) Payment of the Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses, to the extent not prohibited by applicable law, in enforcing this Note. These expenses include, for example, court costs and reasonable attorney's fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method of giving notice, any notice that must be given to me under this Note will given by delivering it or by mailing it by first class mail addressed to me at the Property Address above or at a different address if I give the Note Holder a notice in writing of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3 above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to keep all of the promises made in this Note. Any person who takes over the obligations of a guarantor, surety, or endorser of this Note is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. LAW THAT APPLIES

Maryland law and Federal law, as applicable, govern this Note. The Lender elects to make this loan under Subtitle 10 of Title 12 of the Maryland Commercial Law Article. I may pay fees and charges discussed in the Deed of Trust and in disclosures I am given, all of which are evidence of this loan.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice that amounts due have not been paid.

_____ (SEAL)          _____ (SEAL)
Borrower -                                Borrower
JEFFREY V HOWES                          TONYA H HOWES

(Sign Original Only) Wachovia Bank, National Association, as Trustee
under the pooling and servicing agreement dated
as of Ma,  1993  REDACTED

WITHOUT RECOURSE
PAY TO THE ORDER OF

Pay To The Order Of, Without Recourse
Wells Fargo Home Mortgage, Inc.            WELLS FARGO HOME MORTGAGE, INC.
The Columbia Bank

BY: _____
Beverly Crossett, Assistant Secretary

By: _____
Michael Torchia, Vice President

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A., SUCCESSOR BY MERGER
WITH WELLS FARGO HOME MORTGAGE, INC.

SAMUEL C. SHELLEY, SENIOR VICE PRESIDENT

STATE OF MARYLAND
COUNTY OF __Prince George's__

I hereby certify, that on this ___16___ of ___April___ , 2003, before me, the
subscriber, a Notary Public of the State of Maryland, in and for the County of_____,
personally appeared ___Jeffrey V. Howes, individually and as attorney in fact for Tonya H.
known to me or satisfactorily proven to be the person whose name is subscribed to the ____Howes
within instrument and acknowledge that he executed the same for the purposes therein
contained.

AS WITNESS:  My hand and notarial seal

My Commission Expires:    ~~10/1/05~~
                          09/01/05

Melvin L. Schneider

ALLONGE                                              **EXHIBIT B, 41**

This Allonge made this 21 day of November, 2009 and is attached to and made a part of that certain Promissory Note:

Dated:                November 30, 2001

Executed by:          Jeffrey V. Howes and Tonya H. Howes

Original Amount:      $696,130.00

Present Holder:       Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003

It is to be read together with, and is hereby incorporated by reference in, the attached instrument and constitutes an integral part thereof.

For good and valuable consideration, Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003 hereby assigns all of its rights, title and interest in said Note to US Bank National Association, as Trustee for WFASC 2003-4 and as a result of said transfer, Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003 has no further interest in said Note. This Allonge shall be annexed to the original Note (or a copy of the Note with a Lost Note Affidavit if the original cannot be located) referenced above for purposes of transferring same.

**REDACTED**

Pay to the Order of

US Bank National Association , as Trustee for

(Without recourse, representation, or

warranty express or implied)

Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003

By: _____

Officer: Karen Abernethy

Title: Vice President

# NOTE ALLONGE REDACTED

**Statement of Purpose:** This Note Allonge is attached to and made part of the Note, for the purpose of Noteholder Endorsements to evidence transfer of interest.

REDACTED

**Loan Date:** 11/30/2001   **Original Loan Amount: $  696,130.00**

Originator:  THE COLUMBIA BANK
Original Mortgagor:  JEFFREY V HOWES AND TONYA H HOWES
Property Address: 7000 MEANDERING STREAM WAY, FULTON, MD 20759

Pay to The Order of
STANWICH MORTGAGE ACQUISITION
COMPANY II, LLC
Without Recourse

REDACTED

CHRISTIANA TRUST, A DIVISION OF WILMINGTON
SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR
STANWICH MORTGAGE LOAN TRUST, SERIES
2013-2 STANWICH MORTGAGE ACQUISITION COMPANY II, LLC
By: ~~The Palisades Group, LLC~~, Its Appointed
Attorney in Fact                               REDACTED

By: _____

Troy Grande, Authorized Signatory



REDACTED    REDACTED

## NOTE ALLONGE    REDACTED

**Statement of Purpose:** This Note Allonge is attached to and made part of the Note, for the purpose of Noteholder Endorsements to evidence transfer of interest.

REDACTED

**Loan Date:** 11/30/2001   **Original Loan Amount: $** 696,130.00

**Originator:** THE COLUMBIA BANK
**Original Mortgagor:** JEFFREY V HOWES AND TONYA H HOWES
**Property Address:** 7000 MEANDERING STREAM WAY, FULTON, MD 20759

Pay to The Order of
US BANK TRUST NATIONAL ASSOCIATION, AS
TRUSTEE OF THE PRP II PALS INVESTMENTS
TRUST
Without Recourse

REDACTED    STANWICH MORTGAGE ACQUISITION COMPANY II, LLC

By: _____

Troy Grande, Authorized Signatory



Redacted

# CONSTRUCTION NOTE

Redacted

**EXHIBIT C**

November 30, 2001

7000 MEANDERING STREAM WAY, FULTON, MD 20759
*[Property Address]*

### 1.  BORROWER'S PROMISE TO PAY

In return for this loan, I, the undersigned borrower or borrowers who shall be referred to in the singular, promise to pay U.S.   $696,130.00   ("principal"), plus interest, to the order of the Lender. The Lender is **The Columbia Bank.**   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

Interest shall accrue daily on that part of principal which has been advanced and has not been paid. Interest will be charged beginning on the date of this Note and continuing until the full amount of principal has been paid. Beginning on the date of this Note, I will pay interest at   6.0000   % per annum. This rate is called the "Initial Interest Rate." The interest rate I will pay will change as and when the Index changes. The Index is the per annum rate published on the first publication date of each calendar month as the Prime Rate in The Wall Street Journal in its compilation of key United States and foreign annual interest rates. If more than one Prime Rate is reported, the highest rate reported shall be the Prime Rate. The interest rate shall never exceed   11.0000   % per annum and never shall be less than   6.0000   % per annum. If the Index is discontinued or substantially altered, the Note Holder may, at its option, choose another index made available to me and verifiable by me and beyond the Note Holder's control. If this happens, the substitute index will, for the purposes of this Note, be considered to be the "Index," although it may be necessary to adjust the number of percentage points above the Index the interest rate will be in order to make the interest rate under the new Index comparable to the interest rate under the prior index. The Note Holder will calculate my interest rate by adding   1.0000   % to the Index.

### 3.  PAYMENTS

I will pay interest by making payments every month. I will make my monthly interest payments on the 1st   day   of   each   month   beginning   on   January 1, 2002   . On   September 1, 2002   I will pay all principal, unpaid interest and any other amounts I owe under this Note in full. This date is called the "Maturity Date." I will make my monthly payments at   5585 STERRETT PLACE, COLUMBIA, MD 21044   or at a different place if required by the Note Holder.

### 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. I may make a full prepayment or a partial prepayment without paying any penalty. If I make a partial prepayment, there will be no delays in the due dates of my monthly payments unless the Note Holder agrees in writing to those delays.

### 5.  LOAN CHARGES

To the extent the charges described in this paragraph apply and actually are incurred by the Note Holder, I may pay the following charges in connection with this loan: loan fees, finder's fees and points; attorney's fees for services rendered in connection with the preparation, closing or disbursement of this loan; any expense, tax or charge paid to governmental agencies; examination of title, appraisal or other costs necessary or appropriate to the security of the loan; premiums for optional credit life, credit disability, involuntary unemployment benefit and similar insurance coverage; premiums for property insurance, title insurance and credit loss insurance purchased from an insurer chosen by me; and any other charges permitted by applicable law.

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits; and (ii) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial payment.

### 6.  BORROWER'S FAILURE TO PAY AS REQUIRED AND DEFAULT

(A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5% of the overdue part of my payment of interest. I will pay this late charge only once on each late payment.

(B) Default

If (1) I do not pay the full amount of each monthly payment on its due date, or (2) any bankruptcy, insolvency or receivership proceeding is commenced by or against me and such petition is not dismissed within ten (10) days, or (3) I die, or (4) a default occurs under the Residential Construction Loan Agreement with the Lender I am signing today ("Loan Agreement"), or (5) I fail to keep any of the promises I have made in or an event permitting acceleration occurs under the Deed of Trust which secures this Note ("Deed of Trust"), or (6) I made any material misrepresentation or omitted any material information in my application and other material supplied to the Lender in connection with this loan, I will be in default. If I am in default, the Note Holder may require me to pay the full amount of principal remaining unpaid, plus all interest and other charges due on this Note. The Note Holder also may exercise all of its rights and remedies under this Note, the Deed of Trust, the Loan Agreement and applicable law.

(C) Payment of the Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses, to the extent not prohibited by applicable law, in enforcing this Note. These expenses include, for example, court costs and reasonable attorney's fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method of giving notice, any notice that must be given to me under this Note will given by delivering it or by mailing it by first class mail addressed to me at the Property Address above or at a different address if I give the Note Holder a notice in writing of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3 above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to keep all of the promises made in this Note. Any person who takes over the obligations of a guarantor, surety, or endorser of this Note is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. LAW THAT APPLIES

Maryland law and Federal law, as applicable, govern this Note. The Lender elects to make this loan under Subtitle 10 of Title 12 of the Maryland Commercial Law Article. I may pay fees and charges discussed in the Deed of Trust and in disclosures I am given, all of which are evidence of this loan.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice that amounts due have not been paid.

_____ 11-20-2001 (SEAL)          _____ (SEAL)
Borrower                                     Borrower
JEFFREY V HOWES                              TONYA M HOWES

(Sign Original Only) Wachovia Bank, National Association, as Trustee
                     under the pooling and servicing agreement dated
                     as of May 29, 2003

Pay To The Order Of, Without Recourse                    WITHOUT RECOURSE
Wells Fargo Home Mortgage, Inc.                          PAY TO THE ORDER OF
The Columbia Bank                                        WELLS FARGO HOME MORTGAGE, INC.

By: _____                                      BY: _____
Michael Torcisi, Vice President                          Beverly Crouch, Assistant Secretary

STATE OF MARYLAND
COUNTY OF __Prince George's__

I hereby certify, that on this ___16___ of ____April____ , 2003, before me, the
subscriber, a Notary Public of the State of Maryland, in and for the County of_____,
personally appeared __Jeffrey V. Howes, individually and as attorney in fact_for Tonya H.
known to me or satisfactorily proven to be the person whose name is subscribed to the     Howes
within instrument and acknowledge that he executed the same for the purposes therein
contained.

AS WITNESS: My hand and notarial seal

My Commission Expires:     10/1/05
                           04/01/05

Notary Public

Melvin L. Schneider

ALLONGE

**EXHIBIT C, 4**

This Allonge made this 21 day of November, 2009 and is attached to and made a part of that certain Promissory Note:

Dated:                  November 30, 2001

Executed by:            Jeffrey V. Howes and Tonya H. Howes

Original Amount:        $696,130.00

Present Holder:         Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003

It is to be read together with, and is hereby incorporated by reference in, the attached instrument and constitutes an integral part thereof.

For good and valuable consideration, Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003 hereby assigns all of its rights, title and interest in said Note to US Bank National Association, as Trustee for WFASC 2003-4 and as a result of said transfer, Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003 has no further interest in said Note. This Allonge shall be annexed to the original Note (or a copy of the Note with a Lost Note Affidavit if the original cannot be located) referenced above for purposes of transferring same.

                              Pay to the Order of

                              US  Bank  National  Association , as  Trustee  for
WFASC 2003-4

                         (Without recourse, representation, or

                              warranty express or implied)

Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003

By:    _Karan Cly_____

       Officer: Karan Abernethy

       Title: Vice President

EXHIBIT C, 5

## LOST NOTE AFFIDAVIT AND INDEMNIFICATION AGREEMENT

STATE OF **MINNESOTA**
COUNTY OF **HENNEPIN**

Loan: Redacted

**Michael L. Hambleton**, (the "Affiant") being first duly sworn upon oath deposes and states:

That he is the Vice President of Loan Documentation for Wells Fargo Bank, N.A. ("Wells Fargo").

That he is authorized by Wells Fargo to execute this Lost Note Affidavit and Indemnification Agreement in favor of **Stanwich Mortgage Acquisition Company II LLC** ("Purchaser"). Notwithstanding anything contained herein, he shall have no personal liability pursuant to this Lost Note Affidavit and Indemnification Agreement.

That the Mortgage Note, executed by the **JEFFREY V HOWES AND TONYA H HOWES** in the original principal sum of **$650,000.00** payable to the order of **THE COLUMBIA BANK**, a copy of which is attached hereto as **Exhibit A** (the "Note"), was lost, is missing and/or destroyed and neither the Affiant nor, to the best of Affiant's knowledge, any of the directors, officers, or employees of Wells Fargo have any knowledge of the location or whereabouts of said Note and, to the best of Affiant's knowledge, said Note has not been paid, satisfied, transferred, assigned, pledged, or hypothecated in any way.

NOW, THEREFORE, for and in consideration of Purchaser and its successors and assigns, accepting a certified copy of the Note in lieu of the original Note, Wells Fargo does hereby agree to defend, indemnify and hold harmless Purchaser, its respective transferees, and their respective assigns, officers, directors, employees, agents, attorneys and representatives (collectively, the "Indemnified") from and against any and all loss or damage together with all reasonable costs, charges and expenses (whether or not a lawsuit is filed) (collectively, the "Loss") incurred by reason of any claim, demand, suit, cause of action or proceeding by a third party arising out of (i) the inability of the Indemnified to enforce the Note according to its terms, (ii) the inability of the Indemnified to recover any related insurance proceeds, or (iii) the inability of the Indemnified to foreclose on the collateral securing the Note, in each case due to the unavailability of the original Note. Wells Fargo shall pay any such Loss upon demand, provided that Wells Fargo is notified of any such Loss in writing, within thirty (30) calendar days after the Indemnified becomes aware of same at the following address: Wells Fargo Bank, N.A., 2701 Wells Fargo Way, MAC X9901-03A, Minneapolis, MN 55467; Attention: Mike Hambleton; with copy to: Wells Fargo Bank, N.A., 800 Walnut Street, MAC N0001-09A, Des Moines, IA 50309; Attention: General Counsel (Capital Markets); provided further, that Wells Fargo will not be liable to the Indemnified for any additional costs, expenses, damages, charges and losses associated with such Loss that are attributable to the diminished ability of the Indemnified and/or Wells Fargo to enforce or defend any rights that the Indemnified may have under the related original Note, if the Indemnified does not notify Wells Fargo of any such Loss within thirty (30) calendar days; and further provided that Wells Fargo is given full opportunity to direct or assist, at Wells Fargo's option, the defense or settlement of any such Loss.

Wells Fargo does hereby further agree that should the original Note ever be found by it, it will promptly notify Purchaser and upon receipt by Wells Fargo of the original Note, will endorse to Purchaser or its designee without recourse such original Note and promptly forward said original Note to Purchaser or its designee. Upon receipt of the original Note by Purchaser, this Lost Note Affidavit and Indemnification Agreement shall become null and void as to any loss accruing subsequent to Purchaser's receipt of such original Note; provided, however, Wells Fargo shall remain liable as to any Loss accruing on or prior to Purchaser's receipt of such original Note.

Executed this day, February 12, 2013.

WELLS FARGO BANK, N.A.

By: _Michael L Hambleton_

Name:   Michael L. Hambleton
Its:   Vice President of Loan Documentation

Subscribed and sworn to before me this day, February 12, 2013.

_[signature]_

Notary Public

VALERIE A. DE SOUZA
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2017
Commission # 31019711

LBER 0 7 1 5 3 FOLIO 0 9 9

PLEASE RETURN TO:
THE COLUMBIA BANK
5585 STERRETT PLACE, STE. 100
COLUMBIA, MD 21044

HC 0296

## ASSIGNMENT OF SECURITY INSTRUMENT

Loan #: Redacted

KNOW ALL MEN BY THESE PRESENTS THAT THE COLUMBIA BANK
organized and existing under the laws of THE STATE OF MARYLAND
party of the first part, in consideration of the sum of ONE DOLLAR ($1.00) and other good and valuable consideration in
lawful money of the United States to it in hand paid by Wells Fargo Home Mortgage. Inc. a California Corp.
3601 MINNESOTA DR MACX4701-022. BLOOMINGTON. MN 55435

party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby
acknowledged, has granted, bargained, sold, assigned, transferred and set over and by these presents does hereby grant,
bargain, sell, assign, transfer and set over unto the said party of the second part that certain Security Instrument executed
by JEFFREY V HOWES and TONYA H HOWES

dated    11/30/01                        and to be filed for record in the Clerk's office of the Circuit Court of the
County of HOWARD                        , State of Maryland              on the following described property:

LOT 45 IN A SUBDIVISION KNOWN AS "PINDELL WOODS, LOTS 1 THRU 45 AND
PRESERVATION PARCELS A THRU F" AS RECORDED AMONG THE LAND RECORDS OF
HOWARD COUNTY. MARYLAND IN PLAT NUMBERED 14922.

together with the Note or obligation described in said Security Instrument and the money due and to become due thereon,
with interest accrued and owing thereon.

TO HAVE AND TO HOLD the same unto the said party of the second part, its successors and assigns forever, the said
party of the first part has caused these presents to be signed in its name by its officer, and its corporate seal to be affixed
this    16th        day of April 2003

WITNESSES:                                            THE COLUMBIA BANK

By: MICHAEL T. GALE...
Its: EXECUTIVE VICE P...
(SEAL)

State of MARYLAND        )
                         ) SS:
County of HOWARD         )

I, an Officer duly authorized to take acknowledgements of deeds according to the laws of the State of MARYLAND
, duly qualified and acting, hereby certify that MICHAEL T. GALEONE, EXECUTIVE VICE PRESIDENT
personally known to me, this day acknowledged before me that said person executed the foregoing Assignment of Security
Instrument as such officer of said organization and that said person affixed thereto the Official Seal of the said
organization and I further certify that I know the said person making said acknowledgement to be the individual described
in and who executed said Assignment of Security Instrument.

IN WITNESS WHEREOF, I hereunto set my hand and Official Seal in said county and state this    16th        day
of April 2003

(SEAL)                                            Notary Public

My commission expires: 9-25-04

This instrument was prepared by:    BARB MCCLANAHAN

LIBER 07153 FOLIO 100

STATE OF MARYLAND
COUNTY OF HOWARD

I hereby certify, that on this 16TH of APRIL, 2003, before me, the subscriber, a Notary Public of the State of Maryland, in and for the County of BALTIMORE personally appeared MICHAEL T. GALEONE, EXECUTIVE VICE PRESIDENT known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledge that he executed the same for the purposes therein contained.

AS WITNESS: My hand and notarial seal

My Commission Expires: 9-25-04

Notary Public



```
INP FD SURE $        5.00
RECORDING FEE       20.00
TOTAL               25.00
Re:# HO02   Rc:# 23491
HDR     JNR.   Blk # 3182
May 09, 2003      10:37 am
```

MDR 9083 FOLIO 417

37

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Wells Fargo Bank, N.A.
3601 MINNESOTA DRIVE, STE 200
BLOOMINGTON, MN 55435
Attn: Redacted
Loan #: Redacted
Prepared By: VIET TRAN

MIN #: Redacted
MERS Phone: Redacted

_____ Space Above this Line for County Recorder _____

## Assignment of Deed of Trust

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:

First Union National Bank, As Trustee
4527 Metropolitan Court Suite C, Frederick, MD 21704

all beneficial interest under that certain Deed of Trust dated:
executed by:  JEFFREY V HOWES and TONYA H HOWES, Trustor

Beneficiary:  The Columbia Bank

and recorded as instrument No. on May 09, 2003 in Book: 07153
Page: 094        , of Official Records in the County Recorders office of
MD    , describing land therein as:                    Howard County
LEGAL DESCRIPTION AS SHOWN AND/OR ATTACHED TO THE DEED OF TRUST REFERRED TO HEREIN.
Pin or Tax ID #:              Loan Amount:      $650,000.00
Property Address: 7000 MEANDERING STREAM WAY, FULTON, MD 20759
TOGETHER with the note or notes therein described or referred to, the money due and to become due
thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

IMP FD SURE $        99.00
RECORDING FEE        26.00
TOTAL               26.00
Rcpt CH05   Rcpt # 27866
MDR   PJR   Blk $ 10
Apr 01, 2005   07:56 am

Wells Fargo Bank, N.A., successor by merger
to Wells Fargo Home Mortgage, Inc.

Dated: March 16, 2005

State of Minnesota    ) ss.
County of Hennepin

GEORGIANA RICE
Vice President Loan Documentation, Wells Fargo Bank,
N.A., successor by merger to Wells Fargo Home
Mortgage, Inc.

On    March 16, 2005                                        before me
personally appeared GEORGIANA RICE, Vice President Loan Documentation  of Wells Fargo Bank, N.A., successor by merger to
Wells Fargo Home Mortgage, Inc. known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies). entity upon behalf of which the person(s) acted,
executed the instrument.  WITNESS my hand and official seal.

FOR NOTARY SEAL OR STAMP

VIET TRAN
Notary Public
Minnesota

_____ (Seal)
VIET TRAN

This is to certify that the within instrument has been prepared by a party to the instrument.

VIET TRAN

20
20
N

LIBER | 335 | FOLIO | 69

13

(Space above this line for recorder use only)

## ASSIGNMENT OF DEED OF TRUST

For value received, Wells Fargo Bank, N.A., s/b/m Wachovia Bank, N.A., f/k/a First Union National Bank, As Trustee, herein "Assignor", whose address is 301 SOUTH TRYON STREET, WACHOVIA PLAZA CHARLOTTE, NC, the undersigned hereby grants, assigns, and transfers to:

US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securites Corporation, Mortgage Pass-Through Certificates, Series 2003-4
4801 Frederica Street, Owensboro, KY 42301

herein "Assignee" its successors and/or assigns, all its right, title, and all beneficial interest under that certain Deed of Trust, herein "Security Instrument" executed by Jeffrey V Howes and Tonya H Howes, dated November 30, 2001, in the amount of $696,130.00 and given to The Columbia Bank and recorded on January 22, 2002 as Document or Instrument Number 000383 and/or in Book 5939, Page 0610 in the Recorder's office of the County of Howard, Maryland, describing land therein as:

Property Address: 7000 Meandering Stream Way, Fulton, MD 20759
Property Tax ID or PIN: n/a
Legal Description: See Attached

Signed this July 20, 2011.

Wells Fargo Bank, N.A., s/b/m Wachovia Bank, N.A.,
f/k/a First Union National Bank, As Trustee

_Bao Thao_

VICE PRESIDENT LOAN DOCUMENTATION

## MARYLAND ALL PURPOSE NOTARY ACKNOWLEDGEMENT

STATE OF MINNESOTA        }
COUNTY OF DAKOTA          }

On this 07/20/2011 before me, Steven T Schmidt, personally appeared: Bao Thao, VICE PRESIDENT LOAN DOCUMENTATION, Wells Fargo Bank, N.A., s/b/m Wachovia Bank, N.A., f/k/a First Union National Bank, As Trustee, ☐ personally known to me - OR - ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary _Steven T Schmidt_

Document drafted and prepared by;
when recorded, return to:

Wells Fargo Home Mortgage
Ashley Dauwalter, x9999-018
PO Box 1629
Minneapolis, MN 55440-9790

STEVEN T SCHMIDT
Notary Public
Minnesota
My Commission Expires Jan. 31, 2014

IMP FD SURE $        40.00
RECORDING FEE        20.00
TOTAL                60.00
Rcst H082    Rcpt # 68947
HDR    TLR    Blk # 332
Jul 26, 2011        08:07 am

This is to certify that the within instrument has been prepared by a party to the instrument.

Name: Ashley Dauwalter

Page 1 of 2

**Legal Description**

LOT 45 IN A SUBDIVISION KNOWN AS "PINDELL WOODS, LOTS 1 THRU 45 AND 47 and PRESERVATION PARCELS A THRU F" AS RECORDED AMONG THE LAND RECORDS OF HOWARD COUNTY, MARYLAND IN PLAT NUMBERED 14922.

EXHIBIT C, 11

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

FINAL DOCUMENTS
WELLS FARGO BANK, N.A.
MAC X4502-04T
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

Howard, Maryland
"HOWES"

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**RECORD 1ST**

Date of Assignment: October 30th, 2013
Assignor: WELLS FARGO BANK, N.A. AS ATTORNEY-IN-FACT FOR U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO WACHOVIA BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-4 at 60 LIVINGSTON AVE, ST. PAUL, MN 55107
Assignee: WELLS FARGO BANK, N.A. at 1 HOME CAMPUS, DES MOINES, IA 50328

Executed By: JEFFREY V HOWES AND TONYA H HOWES  To: THE COLUMBIA BANK
Date of Deed of Trust: 11/30/2001 Recorded: 01/22/2002 in Book/Reel/Liber: 5939 Page/Folio: 0610 as Instrument No.: 000383 in the County of Howard, State of Maryland.

Property Address: 7000 MEANDERING STREAM WAY, FULTON, MD 20759

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said assignor hereby assigns unto the above-named assignee, the said Deed of Trust having an original principal sum of $696,130.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the said assignor hereby grants and conveys unto the said assignee, the assignor's beneficial interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said assignee forever, subject to the terms contained in said Deed of Trust.

IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

WELLS FARGO BANK, N.A. AS ATTORNEY-IN-FACT FOR U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO WACHOVIA BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-4
On **10/31/13**

By _____
Susan E. Balfanz
Vice President Loan Documentation

"VHM"VHMWFEM"10/30/2013 02:59:43 PM" WFEM02WFEMA000000000000000961355" MDHOWAR" MDSTATE_TRUST_ASSIGN_ASSN"*PS2WFEM"

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF ___Minnesota___
COUNTY OF ___Hennepin___

On ___OCT 31 2013___, before me, ___Jonathan Edward Johnson___, a Notary Public in and for ___Hennepin___ in the State of ___Minnesota___ personally appeared ___Susan E. Balfanz___, Vice President Loan Documentation, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

___Jonathan Edward Johnson___
Notary Expires: / /

(This area for notarial seal)

PREPARED BY: WELLS FARGO BANK, N.A.

JONATHAN EDWARD JOHNSON
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2015

MARYLAND

## ASSIGNMENT OF DEED OF TRUST

ORIGINAL MORTGAGE AMOUNT - $696,130.00

FOR VALUE RECEIVED, the undersigned **Wells Fargo Bank, N.A.** (Assignor), hereby, grants, assigns and transfers unto Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust, Series 2013-2, all beneficial interest under that certain Deed of Trust dated November 30, 2001 executed by Tonya H. Howes and Jeffrey V. Howes, Borrowers, to Michael T. Galeone and Matthew T. Becker, Trustees, and The Columbia Bank as Beneficiary, recorded on January 22, 2002 in Liber 5939, Folio 0610 of the Official Records of the Clerk of the Circuit Court for HOWARD COUNTY, State of MARYLAND, describing land therein.

**PROPERTY ADDRESS:** 7000 Meandering Stream, Fulton, Maryland 20759

IN WITNESS WHEREOF, Assignor, Wells Fargo Bank, N.A., has caused this Assignment to be signed in its corporate name and its corporate seal to be hereunto affixed and attested, this 20 day of March , 2014.

IN THE PRESENCE OF:

MARY ROMO
COMM. #2026317
Notary Public - California
Orange County
My Comm. Expires May 26, 2017

Wells Fargo Bank, N.A. by Carrington Mortgage Services, LLC, Attorney in Fact

BY:

Title: **Elizabeth A. Ostermann, Vice President, Default, SCRA for Carrington Mortgage Services, LLC, Attorney in Fact**

STATE OF ___CALIFORNIA___
COUNTY OF ___ORANGE___

On the 20 day of March , 2014, before me, a Notary Public in and for said State personally appeared Elizabeth A. Ostermann , who proved to me on the basis of satisfactory evidence to be the person(s) who name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Notary Public
My Commission Expires:

Tonya H & Jeffrey V Howes
2013-37835
Page 1
(kmg 3-20-14)

LEGAL DESCRIPTION:

LOT 45 IN A SUBDIVISION KNOWN AS "PINDELL WOODS, LOTS 1 THRU 47 and
PRESERVATION PARCELS A THRU F" AS RECORDED AMONG THE LAND RECORDS OF
HOWARD COUNTY, MARYLAND IN PLAT NUMBERED 14922.

**Please Record and Return to:**
**McCabe, Weisberg & Conway, LLC**
**312 Marshall Avenue, Suite 800**
**Laurel, MD 20707**
**(301) 490-3361**

Tonya H. & Jeffrey V. Howes
2013-37835
Page 2
(kmg 3-20-14)

**EXHIBIT D**

| | |
|---|---|
| Thomas P. Dore, et al<br>as Substituted Trustees | IN THE |
| VS. | CIRCUIT COURT |
| Jeffrey V. Howes<br>Tonya H. Howes | FOR |
| Defendant(s) | HOWARD COUNTY |
| | CASE NO. |

## AFFIDAVIT CERTIFYING OWNERSHIP OF DEBT INSTRUMENT AND ACCURACY OF NOTE SUBMITTED HEREWITH

I CERTIFY in compliance with Maryland Code Section 7-105.1(d)(2)(iii) and Maryland Rule 14-207(b)(3) that the debt instrument submitted herewith is a true and correct copy of the Note applicable to the present foreclosure action, that US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 is the owner and holder of the loan evidenced by the Note.

I SOLEMNLY AFFIRM under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge, information, and belief.

Dated: *January 18th, 2012*

US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4, by Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A., as servicing agent

*Alisha M Allen*

Alisha M. Allen

Vice President of Loan Documentation

# EXHIBIT E

| | |
|---|---|
| Mark S Devan, *et al*<br>as Substituted Trustees | IN THE |
| VS. | CIRCUIT COURT |
| | FOR |
| Jeffrey V. Howes<br>Tonya H. Howes | HOWARD COUNTY |
| Defendant(s) | CASE NO.  13-C-12-089855 |

## AFFIDAVIT PURSUANT TO 7-105.1(e)(2)(iii) AND 14-207(b)(3)

On this ___29th___ day of August 2016, I solemnly affirm under the penalties of perjury that the contents of the following are true and correct to the best of my knowledge, information, and belief:

1. That I, Allison Levaugh, am the asset manager of SN Servicing Corporation, as Servicer for US Bank Trust National Association, as Trustee of the PRP II PALS Investments Trust.

2. That I am at least eighteen (18) years of age and competent to testify.

3. US Bank Trust National Association, as Trustee of the PRP II PALS Investments Trust is the owner and holder of the debt instrument evidenced by the note.

4. That the copy of the debt instrument attached hereto is a true and accurate copy.

SN Servicing Corporation, as Servicer for US Bank Trust National Association, as Trustee of the PRP II PALS Investments Trust

_Allison Levaugh_

By: Allison Levaugh/Asset Manager

EXHIBIT F

| | |
|---|---|
| Thomas P. Dore, et al<br>as Substituted Trustees | IN THE |
| VS. | CIRCUIT COURT |
| Jeffrey V. Howes<br>Tonya H. Howes | FOR |
| Defendants | HOWARD COUNTY |
| | CASE NO. |

### AFFIDAVIT PURSUANT TO 7-105.1(d) AND 14-207(b)(1)

On this **17** day of **Feb**, 20 **12**, I solemnly affirm under the penalties of perjury that the contents of the following are true and correct to the best of my knowledge, information, and belief:

1. That I, **Shannon Menapace**, am **SUBSTITUTED TRUSTEE** in the subject case.

2. That I am at least eighteen (18) years of age and competent to testify.

3. That the copy of the lien instrument, Deed of Trust, attached hereto is a true and accurate copy.

Shannon Menapace
Covahey, Boozer, Devan & Dore, P.A.
of counsel to
Huesman, Jones and Miles, LLC
11350 McCormick Road
Executive Plaza III, Suite 200
Hunt Valley, Maryland 21031
Office: 443-541-8600
Fax: 410-296-2131

**EXHIBIT G**

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
### Baltimore Division

In re: Jeffrey V Howes

Bankruptcy Case No. 13-30614
Adversary Case No. 13-00510
Chapter 13

**************************

Jeffrey V Howes and
Tonya H Howes

          Plaintiffs(s)

    vs.

Carrington Mortgage Services, LLC
Christiana Trust, A Division of Wilmington
Savings Fund Society, FSB, as trustee for
Stanwich Mortgage Loan Trust, Series 2013-2
         Defendant(s)

**********************************************************

### LINE TO COURT REGARDING SERVICE OF AFFIDAVIT
### CERTIFYING OWNERSHIP OF DEBT INSTRUMENT

      COMES NOW, Christiana Trust, A Division of Wilmington Savings Fund Society, FSB as trustee of Stanwich Mortgage Loan Trust, Series 2013-2 (Carrington Mortgage Services, LLC, Servicer) by and through undersigned counsel and confirms that a copy of the attached Affidavit Certifying Ownership of Debt Instrument was served to debtor's counsel via ECF means on April 3, 2014. A true and accurate copy of the documents listed in the Affidavit will be sent directly to counsel for the debtor via e-mail to the address listed in the docket report.

                            /s/ Michael T. Cantrell, Esq. (kmg)
                            Michael T. Cantrell, Esq.
                            Attorney for Creditor
                            Bar No. 08793
                            312 Marshall Avenue, Suite 800
                            Laurel, MD 20707
                            301-490-1196
                            bankruptcymd@mwc-law.com

                            /s/ Kyle J. Moulding, Esq. (kmg)
                            Kyle J. Moulding, Esq.

Attorney for Creditor
Bar No. 30148
312 Marshall Avenue, Suite 800
Laurel, MD 20707
301-490-1196
bankruptcymd@mwc-law.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Line along with the attached Affidavit was sent electronically via the CM/ECF system on April 3, 2014, to Robert Haeger, Esq., Attorney for Debtor.

/s/ Michael T. Cantrell, Esq.

## EXHIBIT H

B 210A (Form 210A) (12/09)

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| JEFFREY V HOWES | ) | CASE NO.  12-30614 |
| DEBTOR(S) | ) | |
|  | ) | |

### TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001 (e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

| US Bank Trust National Association, as Trustee of the PRP II PALS Investments Trust | Christiana Trust c/o Selene Finance, LP |
|---|---|
| Name of Transferee | Name of Transferor |

Name and Address where notices of transferee should be sent:
SN Servicing Corporation
323 Fifth Street
Eureka, CA 95501
Last Four Digits of Acct #: 0420

Court Claim # (if known): 4-2
Amount of Claim:  $740,334.24
Date Claim Filed: March 8, 2013
Last Amendment Filed: March 15, 2013
Last Four Digits of Acct#: 9319

Name and Address where transferee payments should be sent (if different from above):
 Same as above

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: /s/ Gene Jung          Date: April 29, 2015
Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000.00 or imprisonment for up to 5 years or both.  18 U.S.C. §§ 152 & 3571.

12/18/2016
Division of Corporations - Filing
EXHIBIT I

Delaware.gov

Governor | General Assembly | Courts | Elected Officials | State Agencies



Department of State: Division of Corporations

Allowable Characters

Frequently Asked Questions    View Search Results

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
Entity Search
Status
Validate Certificate
Customer Service Survey

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
Taxes
Expedited Services
Service of Process
Registered Agents
GetCorporate Status
Submitting a Request
How to Form a New Business Entity
Certifications, Apostilles & Authentication of
Documents

## Entity Details

THIS IS NOT A STATEMENT OF GOOD STANDING

| | | | |
|---|---|---|---|
| File Number: | 5686374 | Incorporation Date / Formation Date: | 2/3/2015 (mm/dd/yyyy) |
| Entity Name: | PRP II PALS INVESTMENTS TRUST | | |
| Entity Kind: | Statutory Trust | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | U.S. BANK TRUST NATIONAL ASSOCIATION | | |
| Address: | 300 DELAWARE AVENUE 9TH FLOOR | | |
| City: | WILMINGTON | County: | New Castle |
| State: | DE | Postal Code: | 19801 |
| Phone: | | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or
more detailed information including current franchise tax assessment, current filing history
and more for a fee of $20.00.

Would you like ○ Status  ○ Status,Tax & History Information  [ Submit ]

[ Back to Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map  |  privacy  |  about this site  |  contact us  |  translate  |  delaware.gov

12/20/2016

Case 16-22829    Doc 43    Filed 12/21/16    Page 87 of 114
Bank of America | Online Banking | Accounts | Account Details | Account Activity

**Bank of America** ≥≥≥

Online Banking

---

**Business Advantage Chk - 5551: Account Activity Transaction Details**

# EXHIBIT J

| | |
|---:|:---|
| **Check number:** | 00000028258 |
| **Post date:** | 09/19/2016 |
| **Amount:** | -11,884.00 |
| **Type:** | Check |
| **Description:** | Check |
| **Merchant name:** | Check |
| **Transaction category:** | Cash, Checks & Misc: Checks |

GREEN DELIVERY SERVICE, INC
8101 SANDY SPRING RD, STE 240
LAUREL, MD 20707
(301) 604-2700

BANK OF AMERICA
LAUREL, MD 20707
7-1636/60

28258

PAY TO THE ORDER OF  Howard County Director of Finance     $11,884.00

eleven thousand, eight hundred, eighty-four 00/100    DOLLARS

MEMO  45137 05/434947 -2016-II009763        AUTHORIZED SIGNATURE

⑈028258⑈ ⑈052001633⑈

For Deposit
Only
<2020010310866>
HCT

**EXHIBIT K**

B 10 (Official Form 10) (12/12)

| UNITED STATES BANKRUPTCY COURT _____ DISTRICT OF MARYLAND | | **PROOF OF CLAIM** |
|---|---|---|

| Name of Debtor:  Jeffrey V. Howes | Case Number:<br><br>12-30614-RAG | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br><br>US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securites Corporation, Mortgage Pass-Through Certificates, Series 2003-4 | |
|---|---|

| Name and address where notices should be sent:<br><br>WELLS FARGO HOME MORTGAGE<br>ATTENTION Bankruptcy Department MAC #D3347-014<br>3476 STATEVIEW BLVD<br>FORT MILL, SC 29715<br><br>Telephone number: WFHM: 800-274-7025  email: POCNOTIFICATIONS@WELLSFARGO.COM | **COURT USE ONLY**<br><br>☐ Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number:**_____<br>    (*If known*)<br><br>Filed on:_____ |
|---|---|

| Name and address where payment should be sent (if different from above):<br><br>WELLS FARGO HOME MORTGAGE<br>1 HOME CAMPUS<br>ATTENTION PAYMENT PROCESSING MAC #X2302-04C<br>DES MOINES, IA 50328<br><br>Telephone number: WFHM: 800-274-7025  email: POCNOTIFICATIONS@WELLSFARGO.COM | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|

**1. Amount of Claim as of Date Case Filed:**    $740,334.24

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**    Money Loaned
    (See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:**<br>XXXXXX3402 | **3a. Debtor may have scheduled account as:**<br><br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br><br>_ _ _ _ _ _ _WFCMGE1230614MDM89233402 _ _ _ _ _ _<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑ Real Estate ☐ Motor Vehicle ☐ Other
**Describe:** 7000 Meandering Stream Way, Fulton, MD 20759

**Value of Property:** $_____

**Annual Interest Rate** 5.750% ☐ Fixed or ☑ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**

$200,196.79

**Basis for perfection:**  Deed of Trust

**Amount of Secured Claim:**    $740,334.24

**Amount Unsecured:**    $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

| ☐ Domestic support obligations under 11 U.S.C 507(a)(1)(A) or (a)(1)(B). | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. § 507 (a)(4). | ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507 (a)(5). | |
|---|---|---|---|
| ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7). | ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507 (a)(8). | ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507 (a)(__). | **Amount entitled to priority:**<br><br>$_____ |

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

EXHIBIT K

2

B 10 (Official Form 10) (12/12)

---

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

---

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor   ☑ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Brian McNair
Title:        Counsel of Claimant
Company:  Covahey, Boozer, Devan & Dore, P.A.

Address and telephone number (if different from notice address above):
11350 McCormick Road
Executive Plaza III, Suite 200
Hunt Valley, MD 21031
Telephone number: (443) 541-8600   email: bankruptcy@mdmtglaw.com

/s/ Brian McNair                          January 2, 2013

Brian McNair, Attorney for Creditor   (Date)
(Signature)

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both 18 U.S.C §§ 152 and 3571.*

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

EXHIBIT K

B 10 (Official Form 10) (12/12)

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a):**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B 10 (Official Form 10) (12/12)    4

---
_____DEFINITONS_____    _____INFORMATION_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(c), and any applicable provisions of the Bankruptcy Code (11 U.S.C § 101 *et seq.*), and any applicable orders of the bankruptcy court.

**EXHIBIT L**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE | **BANKRUPTCY NO.  12-30614-RAG** |
| **JEFFREY V. HOWES**<br>**DEBTOR(S)** | **CHAPTER 13** |

### OBJECTION TO CONFIRMATION OF PLAN

Wells Fargo Bank, N.A. as Servicer for US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securites Corporation, Mortgage Pass-Through Certificates, Series 2003-4

, a secured creditor, by its attorney, Brian McNair, files this Objection to Confirmation of Plan and states:

1.      That Wells Fargo Bank, N.A. as Servicer for US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securites Corporation, Mortgage Pass-Through Certificates, Series 2003-4

is the holder of a note secured by a Deed of Trust/Mortgage on the property known as 7000 Meandering Stream Way, Fulton, MD 20759 which is owned by the Debtor(s).

2.      The plan does not provide for full payments of the arrearages.  The plan provides for $35,662.00, which is less than the amount of the full arrears.  The arrears are approximately $200,196.79.

WHEREFORE, Wells Fargo Bank, N.A. as Servicer for US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securites Corporation, Mortgage Pass-Through Certificates, Series 2003-4

requests this Honorable Court deny confirmation of the Plan as filed by the Debtor(s).

/s/  Brian McNair
_____
Brian McNair
Bar Number 25270
Covahey, Boozer, Devan, & Dore, P.A.
11350 McCormick Road
Executive Plaza III, Suite 200
Hunt Valley, MD 21031
(443) 541-8600
Attorney for Movant

EXHIBIT M

B 10 (Official Form 10) (12/12)

| UNITED STATES BANKRUPTCY COURT _____ DISTRICT OF MARYLAND | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:  Jeffrey V. Howes | Case Number:  12-30614-RAG | |
|---|---|---|

**NOTE:** *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Wells Fargo Bank N.A.

**COURT USE ONLY**

Name and address where notices should be sent:

WELLS FARGO HOME MORTGAGE
ATTENTION Bankruptcy Department MAC #D3347-014
3476 STATEVIEW BLVD
FORT MILL, SC 29715

Telephone number: WFHM: 800-274-7025   email: POCNOTIFICATIONS@WELLSFARGO.COM

☑ Check this box if this claim amends a previously filed claim.

**Court Claim Number:____4-1____**
(*If known*)

Filed on:_____3/8/2013____

Name and address where payment should be sent (if different from above):

WELLS FARGO HOME MORTGAGE
1 HOME CAMPUS
ATTENTION PAYMENT PROCESSING MAC #X2302-04C
DES MOINES, IA 50328

Telephone number: WFHM: 800-274-7025   email: POCNOTIFICATIONS@WELLSFARGO.COM

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**        $740,334.24

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**   Money Loaned
    (See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** XXXXXX3402 | **3a. Debtor may have scheduled account as:** <br><br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):** <br> _ _ _ _ _ _ _WFCMGE1230614MDM89233402 _ _ _ _ _ _ _ <br> (See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff:  ☑ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:**  7000 Meandering Stream Way, Fulton, MD 20759

**Value of Property:** $_____

**Annual Interest Rate** 5.750%  ☑ Fixed  or  ☐ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**

$200,196.79

Basis for perfection:  Deed of Trust

Amount of Secured Claim:   $740,334.24

Amount Unsecured:          $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (12/12)

2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.      ☒ I am the creditor's authorized agent.      ☐ I am the trustee, or the debtor,      ☐ I am a guarantor, surety, indorser, or other codebtor.
                                                                           or their authorized agent.          (See Bankruptcy Rule 3005.)
                                                                           (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Brian McNair
Title:  Counsel of Claimant
Company:  Covahey, Boozer, Devan & Dore, P.A.                     /s/ Brian McNair                          March 15, 2013

Address and telephone number (if different from notice address above):     Brian McNair, Attorney for Creditor        (Date)
11350 McCormick Road                                                       (Signature)
Executive Plaza III, Suite 200
Hunt Valley, MD 21031
Telephone number:  (443) 541-8600     email:  bankruptcy@mdmtglaw.com

Penalty for presenting fraudulent claim:  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U.S.C §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law.  In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor,
exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

B 10 (Official Form 10) (12/12)

3

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a):**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B 10 (Official Form 10) (12/12)

4

_____DEFINITONS_____

_____INFORMATION_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One of more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(c), and any applicable provisions of the Bankruptcy Code (11 U.S.C § 101 et seq.), and any applicable orders of the bankruptcy court.

**EXHIBIT N**

B 210A (Form 210A) (12/09)

# United States Bankruptcy Court
## For The District Of MARYLAND
## BALTIMORE Division

In re: <u>Jeffrey V Howes</u>                                    Case No. <u>12-30614</u>

## AMENDED TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

<u>Christiana Trust, A Division of Wilmington</u>          <u>Wells Fargo Bank, N.A.</u>
<u>Savings Fund Society, FSB, as trustee for Stanwich</u>   Name of Transferor
<u>Mortgage Loan Trust, Series 2013-2</u>
Name of Transferee

Name and Address where notices to transferee          Court Claim # (if known): <u>4-2</u>
should be sent:                                        Amount of Claim: <u>$740,334.24</u>
                                                      Date Claim Filed: <u>March 15, 2013</u>
Carrington Mortgage Services, LLC                     Last Four Digits of Acct. #:3402
1610 E. Saint Andrew Place, Suite B150
Santa Ana, California 92705


Name and Address where transferee payments
should be sent (if different from above):

Carrington Mortgage Services, LLC
1610 E. Saint Andrew Place, Suite B150
Santa Ana, California 92705


I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By:     <u>Michael T. Cantrell</u> (kmg)          Date: <u>June 11, 2013</u>
        Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of January, 2013, a copy of the foregoing Objection to Confirmation of Plan has been served upon the following parties in interest, via either electronic mail or first class mail postage prepaid:

Robert Haeger
Haeger Law
11403 Seneca Forest Circle
Germantown, MD 20876
ecf@haegerlaw.com


Ellen W. Cosby
300 East Joppa Rd, Suite 409
Towson, MD 21286
ECF@ch13balt.com


/s/ Brian McNair

Brian McNair
bankruptcy@mdmtglaw.com

#25
#40101273

FILED

**EXHIBIT O**

B 210A (Form 210A) (12/09)

2014 JUL 14  A 11: 31

DISTRICT OF MARYLAND
BALTIMORE

# UNITED STATES BANKRUPTCY COURT

### District of Maryland

In re Jeffrey V Howes                                  ,                  Case No.  12-30614

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

| | |
|---|---|
| Christiana Trust c/o Selene Finance, LP | Carrington Mortgage Services, LLC |
| Name of Transferee | Name of Transferor |

Name and Address where notices to transferee should be sent:
Selene Finance LP
9990 Richmond Ave. Suite 400S
Houston, TX 70042

Court Claim # (if known): _____4_____
Amount of Claim:  $740,334.24
Date Claim Filed:  03/08/2013

Phone:  904-473-0499
Last Four Digits of Acct #: _____9319_____

Phone:  800-267-4051
Last Four Digits of Acct. #: _____7537_____

Name and Address where transferee payments should be sent (if different from above):
P.O. Box 71243
Philadelphia, PA 19176-6243

Phone:  904-473-0499
Last Four Digits of Acct #: _____9319_____

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By:/s/Michelle R. Ghidotti-Gonsalves _____          Date: 07/10/2014 _____
         Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

14



# SELENE®

## FINANCE

9990 Richmond Avenue
Suite 400 South
Houston, TX 77042
Telephone (877) 735-3637
www.selenefinance.com

Hours of Operation (CT)
Monday - Thursday: 8 a.m. - 9 p.m.
Friday: 8 a.m. - 5 p.m.

### SERVICING TRANSFER INFORMATION

06/16/2014

JEFFREY V HOWES
TONYA H HOWES
14900 SWEITZER LN STE 105
LAUREL, MD 20707-2915

Selene Finance Loan #:       9319
Current UPB:        $581,623.46
Property:        7000 MEANDERING STREAM
FULTON, MD 20759

Dear Mortgagor (s):

Welcome to Selene Finance LP ("Selene"). The servicing of your mortgage loan is transferring from Carrington Mortgage Services, LLC to Selene. Please review the following important information regarding your loan payments.

Effective June 2, 2014, please begin sending your mortgage payments to Selene using one of the options below.

| Payment Options: | Mail | Phone |
|---|---|---|
| | Selene Finance LP | Loan Resolution Department |
| | Attention: Cashiering Department | (877) 768-3759 |
| | P.O. Box 71243 | |
| | Philadelphia, PA 19176-6243 | |

Please contact your insurance agent to ensure that Selene receives proof that your property is insured with a Hazard Policy and for Flood and Windstorm, where applicable. Please take the necessary steps to have all future bills and proof of insurance forwarded to the addresses below:

| Insurance | Property Taxes |
|---|---|
| Selene Finance | Selene Finance LP #11740 |
| Its Successors and/or Assigns | P. O. Box 961294 |
| ATIMA | Ft. Worth, TX 76161-0294 |
| P. O. Box 100541 | |
| Florence, SC 29502-0541 | |

Selene will send you a Billing Statement each month. You may use one of the enclosed temporary coupons to remit your payments until your Billing Statement arrives. Your loan is currently due for the 01/01/2010 payment.

If more than one loan is transferring to Selene, this letter refers only to loan number       9319. Selene will send you a Welcome Letter and Temporary Coupons for each loan. When making payments, please send the correct amount for each loan and include the payment coupon(s) with your remittance.

If your previous service automatically drafted payments from your checking or savings account, this service is not transferable. Enclosed is an automatic drafting authorization form, which will allow you to establish an ACH draft with Selene. Please return the completed form to Selene Finance LP, Attention: Cashiering Department, P. O. Box 422039, Houston, TX 77242-4239. Please send payments by check or money order until Selene notifies you in writing that the automatic draft process is complete.

By January 31 of each year, Selene will provide an Annual Tax and Interest Statement for your IRS reporting for the portion of the previous year that Selene serviced your loan.

If your loan is currently escrowed for taxes and/or insurance, Selene is required by law to analyze your loan. Selene will notify you in writing if your payment amount changes.

Selene Finance LP is a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

If you received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral property. Also, if you are involved in a bankruptcy please note that Selene Finance LP intends to fully comply with the Code including, without limitation, the automatic stay and the provisions of any confirmed bankruptcy plan.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Selene will not foreclose on the property of a servicemember or his or her dependent during that time, unless pursuant either to a court order or a servicemember's written waiver agreement.

2285488605

Premiums for mortgage life, accidental death, or disability insurance will not be transferred from your previous servicer. You may contact your carrier for arrangements to maintain your coverage through direct billing. Please contact your previous servicer if you are unsure of your carrier's name.

NOTICE REGARDING REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA): Please review the attached Notice of Assignment, Sale or Transfer of Servicing Rights. This is the official notification required by law from the transferee, Selene Finance LP. **That notice also includes important information about your consumer rights under federal and state law.**

NOTICE REGARDING FAIR AND ACCURATE CREDIT TRANSACTIONS ACT OF 2003 (FACTA): Selene may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

Should you have questions, please contact Gregorio Pineda in Selene's Customer Service Department at (877) 735-3637 during the hours indicated above or visit our website at www.selenefinance.com. Any written correspondence should be sent to Selene Finance LP, Attention Customer Service Department, P. O. Box 422039, Houston, TX 77242-4239. You may also contact Carrington Mortgage Services, LLC at 1-877-603-2777, Monday through Friday 7:00 a.m. to 6:00 p.m. PST.

Sincerely,

Selene Finance LP

Enclosure:            Notice of Assignment, Sale, or Transfer of Servicing Rights; Selene Finance LP Notice of your Financial Privacy Rights; Authorization Agreement for Pre-Authorized Payments; Temporary Coupon



## NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold, or transferred from Carrington Mortgage Services, LLC to Selene Finance LP, effective June 2, 2014.

The assignment, sale, or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, federal law requires that your present servicer send you this notice at least 15 days before the effective date of transfer or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing.

Your present servicer is Carrington Mortgage Services, LLC. If you have any questions relating to the transfer of servicing from your present servicer, call Carrington Mortgage Services, LLC at 1-877-603-2777, Monday through Friday 7:00 a.m. to 6:00 p.m. PST. This is a toll-free number.

Your new servicer will be Selene Finance LP. The business address for your new servicer is 9990 Richmond Avenue, Suite 400 South, Houston, TX 77042. The toll-free telephone number for your new servicer is (877) 735-3637. If you have any questions relating to the transfer of servicing to your new servicer call Selene Finance LP Customer Service Department toll-free at (877) 735-3637 Monday through Thursday from 8 a.m. to 9 p.m. and Friday from 8 a.m. to 5 p.m., CT.

The date that your present servicer will stop accepting payments from you is June 1, 2014. The date that your new servicer will start accepting payments from you is June 2, 2014. Send all payments due on or after that date to your new servicer.

The transfer of servicing rights may affect the terms of or the continued availability of mortgage life or disability insurance or any other type of optional insurance in the following manner: premiums for mortgage life, accidental death, or disability insurance will not be transferred from your previous servicer. You may contact your carrier for arrangements to maintain your coverage by direct billing. Please contact your previous servicer if you are unsure of your carrier's name.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 USC 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 USC 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 5 business days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name, account number, and reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to Selene Finance LP, Attention Customer Service Department, P. O. Box 422039, Houston, TX 77242-4239.

Not later than 30 business days after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute. During this 60-business-day period after receiving your request relating to a dispute regarding your payments, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

Maryland law provides that if you send a written complaint or question to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written response within 15 days of receipt of your request. Any written correspondence should be sent to Selene Finance LP, Attention Customer Service Department, P. O. Box 422039, Houston, TX 77242-4239

If your servicer fails to give written notice of the transfer of servicing or fails to make timely payments of taxes or insurance premiums assuming the mortgagor has paid an amount to cover these costs and the servicer has received the tax bill or notice, the servicer faces liability for any economic damage incurred by the mortgagor. MD COML § 13-316(b).

Selene Finance LP
06/16/2014



2285488605

**NOTICE OF INTENT TO FORECLOSE**                         **EXHIBIT P**

Pursuant to Real Property Article, §7-105.1, Annotated Code of Maryland

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU ARE CURRENTLY IN DEFAULT ON YOUR MORTGAGE LOAN. IF YOU DO NOT PAY WHAT IS OWED OR OTHERWISE CURE THIS DEFAULT, WE MAY SELL YOUR PROPERTY AT A FORECLOSURE SALE. PLEASE READ THIS NOTICE CAREFULLY.**

Date of Notice: 12/1/2009

Address of Property Subject to This Notice:

7000   MEANDERING STREAM, FULTON, MD  20759

Name of Borrower(s): JEFFREY HOWES    TONYA HOWES

Mailing Address of Borrower(s): 14900 SWEITZER LANE SUITE 201, LAUREL, MD  20707

Name of Record Owner (if different from Borrower(s)):

N/A

Mailing Address of Record Owner (if different from Borrower(s)):

N/A

Mortgage Loan Number:  708/0127973402

Lien Position (Indicate whether first or subordinate lien):

1st Lien

Date Most Recent Loan Payment Received:

9/21/2009

Period to Which Most Recent Mortgage Loan Payment Was Applied:

6/1/2009

Date of Default: 7/2/2009

Total Amount Required to Cure Default: $24,738.02

Name of Secured Party: US Bank National Association, as Trustee for WFASC 2003-4

Telephone Number of Secured Party: 1-866-999-5695

Name of Loan Servicer (if different from Secured Party):

Wells Fargo Home Mortgage

Telephone Number of Loan Servicer (if applicable):

1-800-416-1472

Your mortgage loan payment is currently 152 days past due and is in default.

**EXHIBIT P**

The following is important information about your mortgage loan:

Date of Notice: 5/10/2011

Address of Property Subject to This Notice:

7000   MEANDERING STREAM, FULTON, MD 20759

Name of Borrower(s): JEFFREY V HOWES     TONYA H HOWES

Mailing Address of Borrower(s):

14900 SWEITZER LANE SUITE 201, LAUREL, MD 20707

Name of Record Owner (if different from Borrower(s)):

N/A

Mailing Address of Record Owner (if different from Borrower(s)):

N/A

Mortgage Loan Number (at least last four digits):

Lien Position (Indicate whether first or subordinate lien): 1st Lien

Date Most Recent Loan Payment Received: 12/21/2010

Period to Which Most Recent Mortgage Loan Payment Was Applied: 8/1/2009

Date of Default: 9/2/2009

~~Total Amount Required to Cure Default as of the Date of this Notice: $111,205.68~~

Name of Secured Party: US Bank National Association , as Trustee for WFASC 2003-4

Telephone Number of Secured Party: 1-866-599-5505

Name of Loan Servicer (if different from Secured Party): Wells Fargo Home Mortgage

Telephone Number of Loan Servicer (if applicable): 1-800-416-1472

Your mortgage loan payment is currently 616 past due and is in default.

**You can avoid foreclosure and cure the default by doing the following: On or before 6/24/2011 you must pay $ 111,205.68 plus any additional payments, late charges, fees, penalties or costs that may be due after the date of this notice to bring your mortgage loan current. Your payment must be made in Certified Funds to Wells Fargo Home Mortgage, 1200 West 7th Street, Suite L2-200, Los Angeles, CA 90017.**

To obtain the exact amount needed to bring your loan current and cure this default, please call us at the toll-free telephone number provided above. Send your full payment to us at this address: **Wells Fargo Home Mortgage, 1200 West 7th Street, Suite L2-200, Los Angeles, CA 90017.**

**If you are unable to cure the default, please contact us immediately to discuss loan repayment options or other possible foreclosure avoidance options, or you may fill out the enclosed Loss Mitigation Application and send it to us along with the required documents in (or at the address on) the preprinted envelope provided.**

**IMPORTANT NOTE: If you do not bring your loan current and cure your default or negotiate a resolution with us, we may file a foreclosure action upon the later of 45 days**

after this Notice is sent or 90 days from the default date. After a foreclosure action is filed, the residential property may be sold.

Name of Mortgage Lender (if applicable):

<u>The Columbia Bank</u>

Maryland Mortgage Lender License Number (if applicable):

<u>N/A</u>

Name of Mortgage Loan Originator (if applicable): <u>N/A</u>

Maryland Mortgage Loan Originator License Number (if applicable): <u>N/A</u>

**cc: A copy of this Notice of Intent to Foreclose has been electronically filed with the Commissioner of Financial Regulation in accordance with the Code of Maryland Regulation 09.03.12.02.**

**Explanation of the Maryland Foreclosure Process and Time Line, Including Requests for Mediation, for Owner-Occupied First Mortgages:**

The process leading up to a foreclosure of your home begins when you receive a "Notice of Intent to Foreclose" in the mail. Your home is not yet in foreclosure, but you should act immediately. You may avoid foreclosure by curing the default as described in the Notice. Alternatively, you may complete the Loss Mitigation Application you receive with the Notice of Intent to Foreclose and return it, together with all required documents, in (or to the address on) the envelope that was included.

A foreclosure may be filed in circuit court 45 days after the Notice of Intent to Foreclose was sent, or 90 days after your loan went into default, whichever is later. When a foreclosure action is filed against your property, you should be served with a packet of papers called an "Order to Docket" or "Complaint to Foreclose."

Maryland law requires most lenders or their servicers to review your circumstances to see if you are eligible for a loan modification or other program that avoids foreclosure before your home can be sold at foreclosure. This review is called loss mitigation analysis.

If the loss mitigation analysis is completed before the "Order to Docket" or "Complaint to Foreclose" is filed and there is a document called a "Final Loss Mitigation Affidavit" in the packet that you receive, you should refer to Timeline # 1 below.

If the loss mitigation analysis is not completed before the "Order to Docket" or "Complaint to Foreclose" is filed, there will be a document called a "Preliminary Loss Mitigation Affidavit" in the packet and you should look at Timeline # 2 below.

EXHIBIT 4                                                    EXHIBIT P

Commissioner of Financial Regulation and complied with the informational requirements of Real Property § 7-105.1(c) and contained: the names and telephone numbers of the secured party, the mortgage servicer, if applicable, and an agent of the secured party who is authorized to modify the terms of the mortgage loan; the name and license number of the Maryland mortgage lender; the total amount required to cure the default and reinstate the loan; the telephone and internet address of nonprofit and government resources available to assist mortgagors and grantors facing foreclosure, as identified by the Commissioner of Financial Regulation; an explanation of the Maryland foreclosure process and time line, as prescribed by the Commissioner of Financial Regulation.

9.  I hereby certify and affirm that, in compliance with Real Property § 7-105.1(c)(5), said notice was accompanied by a loss mitigation application and all required documents and addressed envelopes.

10.  I hereby certify and affirm that, in compliance with Real Property § 7-105.1(c)(3), a copy of said notice was electronically sent to the Commissioner of Financial Regulation.

US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 By Wells Fargo Home Mortgage, Inc., A Division of Wells Fargo Bank, NA. as servicing agent.

Erinn T. Rochelle
Vice President of Loan Documentation

008-MD-V2

# EXHIBIT 4

State of South Carolina        )

County of York      )

Sworn and subscribed to before me this 12th day of January, 2012.

Geraldine Johnson
_____
Notary Public

My Commission expires: _01 - 15 - 2013_

OFFICIAL SEAL
Notary Public
State of South Carolina
GERALDINE JOHNSON
My Commission Expires Jan. 15, 2013

008-MD-V2

EXHIBIT P

THIS DECLARATION OF SUBSTITUTION OF TRUSTEES, effective this 28th day of

October, 2011, by Wells Fargo Bank, N.A., Attorney-in-fact for US Bank National Association, as

Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset

Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4

, Declarant.

WHEREAS, By Deed of Trust dated November 30, 2001 and recorded among the Land Records

of Howard County in liber 5939, folio 610, from Jeffrey V. Howes and Tonya H. Howes to Michael T.

Galeone an Matthew T. Becker who were named as Trustee for The Columbia Bank, the Beneficiary

therein. The Deed of Trust secures the property known as 7000 Meandering Stream Way, Fulton, MD

20759, Howard County, State of Maryland; and

WHEREAS, the aforesaid Deed of Trust provides inter alia that the holder of the indebtedness

secured by said Deed of Trust shall be entitled to substitute Trustees by the recording of an appropriate

instrument among the Land Records of the appropriate County; and

WHEREAS, Declarant herein, being the present holder of the indebtedness as hereinabove set

forth, desires to substitute Thomas P. Dore, Mark S. Devan, Gerard F. Miles, Jr., Shannon Menapace,

and Erin Gloth, as Substituted Trustees in the place and stead of Michael T. Galeone an Matthew T.

Becker and in the place and stead of any subsequently appointed Substituted Trustees with full powers

to them as set forth in said Deed of Trust;

NOW THEREFORE, this Declaration witnesseth, that the said US Bank National Association,

as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo

Asset Securites Corporation, Mortgage Pass-Through Certificates, Series 2003-4

, in pursuance of the power and authority vested in it by the said Deed of Trust, does hereby substitute

Thomas P. Dore, Mark S. Devan, Gerard F. Miles, Jr., Shannon Menapace, and Erin Gloth, as

Substituted Trustees in the place and stead of Michael T. Galeone an Matthew T. Becker and in the

place and stead of any subsequently appointed Substituted Trustees under that Deed of Trust dated

November 30, 2001 and recorded as aforesaid, with full power and authority in them as set forth in said

Deed of Trust. The act of one Substituted Trustee shall bind all of the Substituted Trustees.

AS WITNESS the signature of the Declarant on the day and year first above written.

Liber: 11507
Folio: 402

> US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4,
> by Wells Fargo Bank, N.A., its Attorney-in-fact

_Samir_   10/28/2011

By: Samir Erian, Vice President Loan Documentation

STATE OF California
COUNTY OF  Orange

On _October 28, 2011_ before me, _J. Garcia_ Notary Public,
personally appeared _Samir Erian_ ,who proved to me on the basis
of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which
the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

_J. Garcia_
Notary Public Signature

> J. GARCIA
> COMM. #1805018
> Notary Public-California
> ORANGE COUNTY
> My Comm. Exp. JULY 1, 2012

I hereby certify that the within instrument was prepared under the supervision of an attorney admitted to practice before the Court of Appeals.

Shannon Menapace

RETURN TO:
Title Co.: Covahey, Boozer, Devan, & Dore, P.A.
11350 McCormick Road
Executive Plaza III, Suite 400
Hunt Valley, MD 21031
(443) 541-8600

**EXHIBIT Q**



**Wells Fargo Home Mortgage**
MAC X2302-02J
1 Home Campus
Des Moines, IA 50328-0001

October 15, 2010

Jeffrey V. Howes
Tonya H. Howes
14900 Sweitzer Lane Ste. 201
Laurel, MD 20707

Dear Jeffrey V. Howes and Tonya H. Howes,

RE:    Loan Number 708-0127973402

I have been asked to respond on behalf of Cara Heiden, Co-President of Wells Fargo Home Mortgage to your correspondence dated August 26, 2010.  Addressing the concerns of our homeowners is vital to our success as a premier mortgage company and I welcome the opportunity to assist you.

It is our standard practice to explore all Home Preservation strategies permitted within investor guidelines, as well as local, state, federal and regulatory statues that may apply. Therefore, we are unable to consider the workout options you have previously provided due to our obligation to review your financial information based on the guidelines set by the investor of your loan.

The Making Home Affordable Program was originally established targeting those homeowner's with loans that are held or guaranteed by investors Fannie Mae (FNMA) and Freddie Mac (FHLMC).  A supplemental directive was issued by the Treasury in March 2009, which encouraged and gave additional guidance to other investors on participating in this program. Please be aware that while other investors have the opportunity to participate in this program, they are not obligated to do so.

In your situation, your loan does not have one individual investor, rather has a group of investors, which we term as a Mortgage Backed Security (MBS) invested loan.  Unfortunately, our MBS loans are currently not participating in the Making Home Affordable Program. Therefore, we are unable to allow your loan to be considered for the Home Affordable Modification Program (HAMP).

Please be assured that we do have a uniform loan modification process for MBS mortgage loans. One of the criteria for being eligible for consideration of a modification is for the loan to be in default or expected or "imminent" default.

The next criterion for consideration is affordability.  The mortgage payment for your loan is $4,852.74 per month.  In reviewing the options available for your loan, we can confirm that options are available which could reduce your payment.  However, we can only offer you a modification if the modification results in you having a monthly surplus in your income after your debts are paid.

Howes
October 15, 2010
Page 2

When a modification is approved on the loan, to cure the delinquency, the allowable arrearages are set aside from the unpaid principal balance. This set aside amount does not require payments to be made until the maturity date of the loan. However, the set aside amount must be paid in full, refinanced, or other workout arrangements be set in place by the maturity date of the loan.

Allowable arrearages can be:

The interest portion of the delinquent mortgage payments
Outstanding Fees & Costs from:
Late Charges on Payments
Inspection Fees
Returned Item Fees
Any Foreclosure Action
Any Bankruptcy Action
Escrow Shortages

What is actually allowable is decided by the investor. If the investor does not allow the late charges or escrow shortage to be capitalized back into the unpaid principal balance, the borrower is asked to pay the amount as a contribution. Also if the investor has a maximum amount that can be capitalized into the unpaid principal balance the borrower will be asked to remit a contribution for the balance owing on the account to ensure the loan is completely current after the modification is processed.

Your contribution to this modification is $4,712.77 for three months starting November 1, 2010 and ending January 1, 2011. The modification documents were forwarded to you on October 06, 2010. For the modification to be processed you need to sign the modification agreement and return to our office along with your contribution within 10 days of receipt.

Furthermore, on October 5, 2010 you inquired about the trustee of your loan. I can confirm your current trustee holder is US Bank. Following the origination of your loan the trustee was Wachovia Bank N.A.

Wells Fargo Home Mortgage is committed to serving the needs of our customers. For future reference, to reach one of our customer service professionals, please call (800) 762-6659. If you have any additional questions or need clarification regarding the information provided, please contact me directly at (800) 853-8516, extension 46872. I am available to assist you Monday through Friday, 8:00 a.m. to 5:00 p.m., Central Time.

Sincerely,

Jason Mullen
Executive Mortgage Specialist, Office of the President

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt as this company has a security interest in the property and will only exercise its rights against the property.

cch

1  literary license there to write it that way because you are

2  exactly right.  It is a motion to dismiss, yes.  But when I

3  read it, I said, okay, I don't -- who owns it?  Doesn't that

4  get us closer to the bottom line, I think?  It should, I would

5  hope that it would.

6      MR. RILEY:  It is very clear that when the two

7  proofs of claims were filed, that Wells Fargo, at that point,

8  owned it.  The first one was wrong.  It was in the name of US

9  Bank with us as the servicer.  The Howes tried to make a great

10 deal out of that and suggested obviously that it was

11 fraudulent.

12     We discovered the error.  Within a week, we

13 clarified the error.  The Court encourages liberal amendment

14 of pleadings when they are not completely accurate.

15     The best way to track ownership is through the land

16 records up in Howard County, which would show that it began

17 with Columbia Bank and then it went to -- I had a cheat sheet

18 that I left on my desk at home so now I am floundering on that

19 particular part of it.

20     But I have that on a footnote where is sets forth,

21 that shows exactly the chain and then ultimately it was

22 assigned to my colleagues at the table here and to their

23 clients as well.

24     It does seem to me that the core of the complaint is

25 that neither Wells Fargo nor US Bank has standing to foreclose

1  on the property or to object to the Chapter 13 plan or to even

2  file a proof of claim.  And yet as the Court has just pointed

3  out, and I will say time and time again, there really is no

4  harm in anything that has happened.

5          Even if the mortgage was removed from the trust or

6  the trust terminated as alleged on January 25th, 2012, which

7  it did, Mr. and Ms. Howes are still indebted to whoever that

8  holder is.  There is no allegation or complaint from Mr. and

9  Ms. Howes paid the money.  And on the contrary, they admit

10 that they are in default.

11         The law is that when a trust has terminated the

12 asset is returned to the grantor and that in this case is

13 Wells Fargo.  In fact, that is what is in the trust

14 document --

15         THE COURT:  Well, does Maryland Law apply there,

16 though.  You only cited the Maryland case, which is, I don't

17 want to call it an ancient case but it was dealing with wills

18 and trusts and reversionary interest and, et cetera, et

19 cetera.  And they use a lot of language that I couldn't

20 understand.

21         MR. RILEY:  Okay.  Well, it is also in the trust

22 document, which is not before the Court, that has now been

23 sent to me.  And I didn't want to introduce it because it is

24 not at that stage.  If we end up in motion summary judgment

25 stage, which may happen after this, I will present it.  But it



EXHIBIT S

http://geminicapitalmanagers.com/note-sellers/

[/one_third]

[two_third last=last]

## Jack Krupey: "Buying & Brokering 1st Lien Non-Performing Loans" (panelist)

[toggle type="gray" title="Read Bio"]

Jack Krupey is one of the nation's most active investors in first position non-performing notes. He is a partner and portfolio manager for Gemini Capital Managers LLC, a multi-million dollar fund focused on buying non-performing and re-performing residential mortgages. Previously Jack worked as an asset manager and trader for a Wall Street fund buying large portfolios of distressed debt. Jack currently oversees a growing portfolio of over 100 non-performing and re-performing notes and is



A RESIDENTIAL MORTGAGE INVESTMENT AND ADVISORY FIRM

Home    Note Buyers    Note Sellers    Advisory    Borrowers    About    Blog    Contact Us

# Note Sellers

## Principal Acquisitions

Gemini Capital Managers is a nationwide, multimillion-dollar buyer of non-performing and reperforming whole loans. We Manage a number of private funds actively purchasing distressed assets nationwide including:

- Non Performing Residential 1st Position Loans
- Re-performing/Scratch and Dent Loans
- Residential Loans in Bankruptcy (BK7, BK13)

# Connect

For more information, please complete this simple form.

First Name

Last Name

Email